[Crim. No. 18358. First Dist., Div. One. Aug. 23, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE PAUL KENT, Defendant and Appellant.

**COUNSEL**

Minami, Tomine & Lew and Kei-On Chan for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—A jury found defendant Dwayne Paul Kent guilty: (count 1) of pimping (Pen. Code, § 266h) in the commission of which he personally and intentionally inflicted "great bodily injury" (Pen. Code, § 12022.7) upon one Betty; (count 2) pandering (Pen. Code, § 266i), i.e., procuring said Betty for the purpose of prostitution, in the commission of which he personally and intentionally inflicted "great bodily injury" (Pen. Code, § 12022.7) upon her; and (count 3) battery which resulted in the infliction of "serious bodily injury" (Pen. Code, § 243) upon said Betty.

He appeals from the judgment which was entered upon the verdicts.

We find no merit in the appeal and, for the following reasons, affirm the judgment.

I.

Kent first contends: "Defendant's conviction was not supported by substantial evidence."

134

We note preliminarily that no contention is made that the jury's verdicts were based, in whole or in part, upon legally inadmissible evidence.

■ " '[S]ubstantial' evidence [is] evidence that reasonably inspires confidence [and is "credible"] and is 'of solid value' . . . ." (*People* v. *Bassett,* 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; . . ." (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) In making this determination an appellate court, viewing all of the evidence, will determine whether a reasonable judge or jury could have found the accused guilty beyond a reasonable doubt. (*People* v. *Beagle,* 6 Cal.3d 441, 449-450 [99 Cal.Rptr. 313, 492 P.2d 1]; *Jackson* v. *Virginia* (June 28, 1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].) In this restricted determination the court will consider "the weight of the evidence before deferring to the conclusions drawn from the evidence by the trier of fact." (*People* v. *Kunkin,* 9 Cal.3d 245, 250 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199].) " 'Appellate duty is not satisfied . . . when substantial evidence emerges on one side. Rather, the judges must look to the evidence on both sides and not limit their scrutiny to that supporting the verdict. . . . Their objective is not to replace the jury but to satisfy themselves that the verdict is reasonable.' " (*People* v. *Fonville,* 35 Cal.App.3d 693, 703-704 [111 Cal.Rptr. 53].) We shall apply these criteria in our consideration of Kent's instant contention.

■ From the above named Betty, the following evidence was developed at the trial. Much of it was taken from her testimony at Kent's preliminary examination.

Betty had been a prostitute, and Kent her pimp, during the four years since Betty was sixteen years of age. She worked each night with an average nightly income of around $150. Kent had introduced her to that occupation and informed her of techniques to be employed. She worked as a prostitute mainly in Oakland, but Kent had taken her to other cities for that purpose. He told her where to stand, what motel to use, and to allow the customer to initiate the solicitation. He delivered her each night to a selected street location and then picked her up the next morning, after which he collected all of her earnings. When and if Betty was arrested, Kent promptly arranged for her release on bail.

When Betty's income was below average, which often happened, Kent would get "mad." On such occasions he would beat her with such things as high heeled shoes, clothes hangers, their son's toy rifle, and his fists; often he would kick her. Once he threw her across the room forcing her hand through a windowpane. Another time he broke her hand which swelled to twice its normal size, and he would not allow a doctor to treat it. As a result of the beatings she suffered lumps, bruises, and cuts, and for the more serious injuries she was hospitalized at least four times. Never, to Betty's knowledge, had Kent held a "straight job."

On his instant contention Kent relies, almost completely, on statements and testimony of Betty wherein she recanted, or denied the truth of, the evidence we have related. But there was other evidence corroborative of that which we have pointed out. A bail receipt which had been obtained from Betty established that Kent had posted bail upon one of her arrests. A motel operator testified that Betty had returned each morning around 2 or 3 o'clock to their room, after which Kent came to the office and paid the room rent. Betty testified at the trial that she "shared" her earnings with Kent. And a police officer testified that he had observed Betty one night standing on a street corner in a pouring rain with an enormously swollen hand and dressed in a leotard body suit, awaiting patronage. She told him that Kent had broken her hand. She was crying and complained of pain, saying that if Kent "didn't see her standing out there that he would beat her, again." She said that she was tired of "getting beat" by Kent and wanted to quit prostitution. The officer kept her under observation and later that morning observed Kent pick her up and drive away.

Under the criteria we have described we find substantial evidence supporting each of the jury's verdicts. To any reasonable mind, we opine, Betty's recantations and reluctance to testify at the trial would appear to have resulted from fear of Kent or some other form of intimidation, or perhaps some masochistic impulse.

## II.

Secondly, Kent contends that the trial court erroneously refused to instruct the jury that they might find him guilty of violating Penal Code section 647, subdivision (b), which he argues is a lesser offense necessarily included in the crimes of pimping (Pen. Code, § 266h) and pandering (Pen. Code, § 266i).

It is settled law that where the evidence establishes that if guilty at all, the accused is guilty of the greater offense, the jury need not be instructed in relation to a lesser included offense. (*People* v. *McCoy*, 25 Cal.2d 177, 187 [153 P.2d 315]; *People* v. *Grigsby*, 275 Cal.App.2d 767, 776 [80 Cal.Rptr. 294]; *People* v. *Garcia*, 250 Cal.App.2d 15, 17-18 [58 Cal.Rptr. 186]; *People* v. *Cota*, 53 Cal.App.2d 455 [127 P.2d 1010].) Here the evidence establishes that Kent, if guilty at all, was guilty of the crimes of pimping and pandering. There was no error.

## III.

■ "Defendant has not inflicted great bodily injury as a matter of law" is Kent's next contention.

The evidence, as noted, established that for failure to earn enough money Kent had hit and broken Betty's right hand causing it to swell to twice its normal size.

The "great bodily injury" which the jury found had been inflicted upon Betty is defined as "a significant or substantial physical injury." (Pen. Code, § 12022.7.) The jury reasonably found that the injury to Betty's right hand was such an injury. Again there was no error.

## IV.

■ Kent's final appellate contention is phrased as follows: "The trial court gave inadequate instruction on the term great bodily injury."

In respect of counts 1 and 2, the pimping and pandering charges, the trial court correctly informed the jury that the Penal Code section 12022.7 *"great bodily injury"* was "a significant or substantial physical injury." On the felonious battery charge (count 3), they were instructed in the language of Penal Code section 243 that *"serious bodily injury* means a serious impairment of physical condition including but not limited to the following: Loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing and serious disfigurement." (Italics added.)

Kent contends that the court did not make "clear to the jury that serious bodily injury was not identical with great bodily injury." We disagree with his premise; in our opinion the two concepts are substantially similar. Until 1977 both of the statutes contained the detailed

definition now found in section 243 alone. Its legislative elimination that year from section 12022.7 brought about our high court's following comment: "It is apparent . . . that the 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that the 1976 detailed definition of great bodily. injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein." (*People* v. *Caudillo*, 21 Cal.3d 562, 581-582 [146 Cal.Rptr. 859, 580 P.2d 274].) Thus, contrary to Kent's contention, the present respective definitions of the two code sections are substantially the same. Nor do we find any reason to suppose that the jury were confused by the instructions on the subject.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

On September 21, 1979, the opinion was modified to read as printed above. The petitions of both parties for a hearing by the Supreme Court were denied October 18, 1979. Clark, J., was of the opinion that the petitions should be granted.