[Crim. No. 19077. First Dist., Div. Four. Mar. 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD STEVEN JOHNSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Kay Kohler, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Appellant Floyd Steven Johnson was convicted, following a jury trial, of a violation of Penal Code section 496 (possession of stolen property) with a finding by the jury that he inflicted great bodily injury upon the person of Joyce Moseman, within the meaning of Penal Code section 12022.7, and violation of Penal Code sections 242-243[1] (battery with serious bodily injury).

On November 17, 1978, appellant was sentenced to state prison for five years and four months—one year and four months for possession of stolen property; three years for infliction of great bodily injury; and one year for the prior felony conviction. Sentence on the battery conviction was stayed pursuant to section 654.

The appeal is from the judgment.

---

[1]Unless otherwise indicated, all further references will be to the Penal Code.

Joyce Moseman and Stephanie Shivers entered the Boston Disco and were seated at a table. They put their purses on the backs of their chairs. Moseman noticed appellant and another male standing at the bar. Appellant then sat down at a table directly behind Moseman's table and the other man asked Moseman to dance. When Moseman declined the invitation, the man, dressed in beige pants and dark sweater,[2] left the disco through the door leading to the bowling alley. Moseman observed that appellant got up from the table and exited the same way. After they had gone, Moseman reached for a cigarette and realized that her purse was gone. She told Shivers, who had just returned from the bar, that their purses were missing. She also informed Harold Welch, the manager of the disco, about the theft of the purses, and that the two suspects went through the door to the bowling alley.

Welch accompanied Moseman outside into the causeway where the two men had gone. Welch looked into the closed bowling alley, but saw no one. Moseman and Welch then entered the men's restroom. On entering the place, Moseman saw her purse on the floor of one of the stalls. She could also see the legs of two men. Welch kicked open the door of the stall and found two men searching two purses. Welch then left the restroom to call the police. As Moseman followed him, she was grabbed from behind by her hair and forced to the ground. The two men in the stall ran from the restroom. One was wearing a beige outfit, the other light-colored pants and a dark top.

Moseman rushed to the locked door leading to the Boston Disco and pounded on it asking to enter. She observed the two men go to the other end of the bowling alley to leave, but the doors were locked. One of them tried to break the glass with a chair. Just as the door to the disco was about to be opened, Moseman was hit with a fist, fell, and briefly lost consciousness. She testified the person who hit her was wearing a light-colored shirt. When she gained consciousness she called the police. Moseman was taken to Valley Medical Hospital. She sustained bruises on her arms and left leg and also a fractured jaw. The diagnosis in the medical records described the injuries as multiple contusions and fracture of the left jaw.

Shivers lost sight of Moseman for about 10 minutes. Then she heard someone knocking on the door to the disco. When she went to open the

---

[2]The evidence established that at the time of the commission of the crimes appellant was in the company of Leroy Lewis, a juvenile. While appellant was wearing a light sweater shirt with matching beige trousers, Lewis was clothed in light slacks with a dark sweater.

door she saw one of the men punching Moseman in the face. Shivers stated that the man who struck Moseman was appellant. Shivers kneeled to help her unconscious friend. "That's when I guess I tangled with Mr. Johnson and my head hit the wall." Shivers' next recollection was that she was taken to the hospital. Her purse, minus a few dollars, was returned to her before she left.

The rest of the prosecution's evidence may be stated as follows: after Welch returned to the disco, he asked his disc jockey to telephone the police and told Charles Gibson, his assistant manager, to run outside because there was trouble in the bowling alley. Finding no disturbance in the parking lot, Gibson returned to the building and entered the bowling alley, where he saw Welch, Moseman, Shivers, and two black men, one of whom was appellant. Gibson observed the two men attempt to break through the glass doors and then return to the entrance of the disco. Gibson testified that appellant's companion hit Moseman with his fist; shortly thereafter, appellant slapped Shivers with an open hand, causing her to fall upon the supine Moseman.[3] Gibson then telephoned the police from the front desk of the bowling alley and returned to the disco to summon help.

Appellant's defense was that he was an innocent bystander to Leroy Lewis' theft and attempted escape.

Leroy Lewis presented testimony which, although generally exculpating appellant, was to a certain degree, inconsistent with appellant's testimony. Lewis admitted taking the two purses from the back of the chairs and carrying them into the stall of the men's room. He testified that he entered the restroom before appellant, who did not come into the stall.[4] While Lewis was examining the contents of the purses, from which he took $4, others entered the restroom and accused him of taking the purses.

Lewis testified that he hit both women and that appellant tried to prevent the assaults.[5] He acknowledged that he could not be prosecuted criminally for the offenses which he admitted because juvenile proceedings against him had been completed.

[3]Gibson's recount of the assaults at trial was apparently inconsistent with his earlier statement made to the prosecutor.

[4]As indicated above, appellant testified that he entered the men's room first and also that he was in the stall with Lewis.

[5]Lewis' probation officer testified that Lewis told him that appellant "hit the person."

## I

### *The Evidence Is Sufficient to Support the Conviction of Receiving Stolen Property*

Appellant first contends that the evidence introduced at trial was insufficient to sustain the conviction for receiving stolen property. We disagree.

Since appellant challenges the sufficiency of the evidence supporting the judgment, initially we set out the basic principles governing the appellate review in such instance. ■ As has been emphasized time and again, the appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal. Rptr. 379, 461 P.2d 659].) If the circumstances reasonably justify the findings of the trier of fact, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of a judgment. (*People v. Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal. Rptr. 529, 457 P.2d 321].)

■ Turning to the substantive issue before us, it is well established that the elements of receiving stolen property are: (1) that the particular property was stolen; (2) that the accused received, concealed or withheld it from the owner thereof; and (3) that the accused knew that the property was stolen. (*People v. Vann* (1974) 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824]; *People v. Martin* (1973) 9 Cal.3d 687, 695 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People v. Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199]; *People v. Osborne* (1978) 77 Cal.App.3d 472, 475 [143 Cal. Rptr. 582]; *People v. Katz* (1975) 47 Cal.App.3d 294, 299 [120 Cal. Rptr. 603].)

In the case at bench, appellant concedes that the property was stolen and also that he knew it was stolen. He insists, however, that the second

element of the crime was lacking and that there is insufficient evidence to show that he possessed the stolen property. Appellant's argument is not unmeritorious.

█ While it has been stated that the mere presence near the stolen property and/or access thereto by itself is not sufficient to sustain a conviction for receiving stolen property and that in order to convict the defendant dominion and control must be shown (*People* v. *Martin, supra,* at p. 696; *People* v. *Myles* (1975) 50 Cal.App.3d 423, 429 [123 Cal.Rptr. 348]; *People* v. *Zyduck* (1969) 270 Cal.App.2d 334, 336 [75 Cal.Rptr. 616]), it is well settled that the possession of the stolen item need not be exclusive and that possession may be established by both direct and circumstantial evidence and reasonable inferences drawn from such evidence. (*People* v. *White* (1969) 71 Cal.2d 80, 82-83 [75 Cal. Rptr. 208, 450 P.2d 600]; *People* v. *Prieto* (1961) 191 Cal.App.2d 62, 71 [12 Cal.Rptr. 577], overruled on other grounds in *People* v. *Butler* (1966) 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]; *People* v. *Nelson* (1959) 171 Cal.App.2d 356, 361 [340 P.2d 718].)

In the case at bench, the evidence establishes that after taking the purses in question, both appellant and Lewis went to the men's room; that they occupied the same stall behind closed doors; and that when the door of the stall was kicked open, eyewitness Welch observed that both appellant and his cohort were bending over and going through the stolen items. This evidence and the reasonable inferences to be drawn therefrom, sustain the proposition that appellant had a larger role than being merely in the vicinity of, or having access to, the stolen property, and that he, in fact, was a joint possessor (at least for a short while) of such items with Lewis. (Cf. *People* v. *White, supra; People* v. *Prieto, supra.*) Needless to say that this evidence is clearly sufficient to substantiate that appellant did possess the property at issue within the purview of the law. (*People* v. *Reilly, supra,* 3 Cal.3d at p. 425; *People* v. *Redmond, supra,* 71 Cal.2d at p. 755.)

II

*The Evidence Is Sufficient to*
*Sustain the Conviction for*
*the Great Bodily Injury*
*Enhancement*

Section 12022.7 provides for a three-year enhancement of the sentence where the defendant has personally and intentionally inflicted great bodily injury upon the victim in the commission of a felony.[6] Appellant argues that the additional three-year punishment imposed upon him pursuant to section 12022.7, cannot be sustained because none of the elements of the statute are supported by the evidence. More precisely, appellant claims (a) that Ms. Moseman's injury did not occur "in the commission" of receiving stolen property; (b) that the injury in dispute was not "significant or substantial" within the meaning of the law; and (c) that the evidence is insufficient to show that he *personally* and *intentionally* inflicted the bodily injury upon Ms. Moseman. As the ensuing discussion shall demonstrate, none of appellant's contentions have any merit.

(a) *The injuries in dispute were*
*inflicted upon the victim in*
*the commission of a section*
*496 felony*

Appellant's first assertion is that the crime of receiving stolen property is completed upon taking of possession of the property with the knowledge that it is stolen. (*Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330, 343 [146 Cal.Rptr. 311]; *People* v. *Feldman* (1959) 171 Cal.App.2d 15, 23-24 [339 P.2d 888].) In the instant case, argues appellant, his involvement with the stolen property began and ended in the bathroom stall. Consequently, the injury inflicted on Joyce Moseman in the causeway near the disco entrance had not occurred in the commission of receiving stolen property but rather constituted an additional independent crime. Appellant's argument is untenable for the following reason.

---

[6]At the time here relevant, section 12022.7 provided: "Any person who, with the *intent* to inflict such injury, *personally* inflicts great bodily injury on any person other than an accomplice *in the commission* or attempted commission *of a felony shall*, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, *great bodily injury means a significant or substantial physical injury.*

"This section shall not apply to murder, manslaughter, assault with a deadly weapon or assault by means of force likely to produce great bodily injury under Section 245. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (Stats. 1977, ch. 165, § 94, p. 679, eff. July 1, 1977; italics added.)

■ In considering the words of a statute, an appellate court is required to read the enactment in the light of the objective sought to be achieved by it as well as the evil sought to be averted. (*Wotton* v. *Bush* (1953) 41 Cal.2d 460, 467 [261 P.2d 256]; *People* v. *Weger* (1967) 251 Cal.App.2d 584, 590 [59 Cal.Rptr. 661].) ■ In enacting section 12022.7, the clear intent of the Legislature was to deter infliction of serious bodily injury on victims of burglary, robbery and other felonies, including the offense of receiving stolen property. ■ Since human experience teaches that a person who has committed an offense will attempt to escape from its situs and since the risk of violent confrontation and consequent injury is at least as great during the course of flight as during the perpetration of the crime itself (*People* v. *Boss* (1930) 210 Cal. 245, 250-251 [290 P. 881]), for the purposes of section 12022.7, offenses committed during escape from the scene of the crime must be deemed acts in the commission of the crime. The conclusion reached by us is in harmony with the existing case law which in analogous situations (e.g., burglary, robbery), held that the crime is not complete until the felon has won his way to a place of temporary safety. (*People* v. *Carroll* (1970) 1 Cal.3d 581, 585 [83 Cal.Rptr. 176, 463 P.2d 400]; see also, *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 726 [156 Cal.Rptr. 94]; *People* v. *Walls* (1978) 85 Cal.App.3d 447, 453-454 [149 Cal. Rptr. 460].) Since the record at hand unerringly demonstrates that the injuries in question were inflicted by appellant in the course of his escape from the scene of the crime and before he reached a place of temporary safety, they *ipso jure* qualify as acts "in the commission of a felony" within the purview of section 12022.7.

(b) *The bone fracture suffered by the victim constitutes "significant or substantial physical injury"*

Appellant next contends that the enhancement provisions of section 12022.7 are inapplicable in the present instance because the jaw fracture suffered by Ms. Moseman does not constitute "significant or substantial physical injury" within the meaning of the statutory and case law. (*People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274].) We disagree.

The *Caudillo* court held that the great bodily injury, designed by the Legislature to trigger enhanced sentences, must be significant, substantial physical injury as contrasted with injuries that can be logically

described as constituting only transitory and short-lived bodily distress that do not fall within the contours of injuries that are severe and protracted. (*People* v. *Caudillo, supra*, at p. 588; see also, *People* v. *Ramirez, supra*, 93 Cal.App.3d 714 at p. 727.)

■ We believe the jaw fracture sustained by Ms. Moseman fairly qualifies as significant and substantial physical injury within the definition of *Caudillo*. It is common knowledge that a bone fracture is not merely a transitory bodily distress, but a severe and protracted injury which causes significant pain and requires considerable time to heal. In other words, in case of a bone fracture the double criteria set out in *Caudillo* are present. This type of injury is of both sufficient severity and permanence and hence constitutes a substantial and significant physical injury within the delineation of both *Caudillo* and the statute.

In reaching this conclusion we are supported not only by common sense and logic, but also by the legislative history of section 12022.7, statutes *in pari materia* and the case law. As originally enacted in 1976, section 12022.7 defined great bodily injury as: "a serious impairment of physical condition, which includes any of the following: (a) Prolonged loss of consciousness. (b) Severe concussion. (c) Protracted loss of any bodily member or organ. (d) *Protracted impairment* of function of any bodily member or organ or *bone*. (e) A wound or wounds requiring extensive suturing. (f) Serious disfigurement. (g) Severe physical pain inflicted by torture." (Italics added.)

The Supreme Court spelled it out that the 1977 amendment to section 12022.7, eliminating a detailed description of great bodily injury: "was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that the 1976 detailed definition of great bodily injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein." (*Caudillo*, 21 Cal.3d at p. 582.)

In defining "serious bodily injury" section 243 likewise specifically mentions bone fracture.[7] (See also CALJIC No. 9.09.)

---

[7]Section 243 provides in part that: "As used in this section, '*serious bodily injury*' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; *bone fracture*; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (Italics added.)

Last, but not least, *People* v. *Kent* (1979) 96 Cal.App.3d 130 [158 Cal.Rptr. 35], explicitly upheld the jury finding that a broken hand constituted a significant or substantial physical injury within the ambit of section 12022.7, by pointing out that section 243, which designates bone fracture as a type of serious bodily injury is *in pari materia* with section 12022.7 and that the "serious bodily injury" and "great bodily injury" defined in sections 243 and 12022.7 respectively, are substantially similar notions. (*People* v. *Kent, supra*, at p. 136.)

        (c)   *The evidence supports the finding that appellant personally and intentionally inflicted great bodily injury upon the victim*

The additional argument that the evidence is insufficient to support the finding that appellant personally and intentionally inflicted great bodily injury upon the victim requires but a relatively brief consideration.

In passing upon the first issue, the record reveals that Ms. Moseman, the victim of the crimes, testified that the man who hit her was wearing a light sweater (light shirt top). This testimony clearly implicates appellant who was wearing a light sweater shirt at the time of the commission of the crimes. Equally important, Eva Shivers, who was an eyewitness to the fight taking place in the causeway, confirmed Ms. Moseman's recount by stating that Ms. Shivers saw appellant strike her friend at the entrance of the disco as she opened the door. Although Ms. Shivers was somewhat uncertain about the color of appellant's clothing, she testified that she could identify appellant's facial features including his facial hair and angry eyes. ■ Despite conflicting testimonies to the contrary, the evidence here described is sufficient to sustain the jury finding that it was appellant who personally inflicted the injuries complained of on the victim. (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267]; *People* v. *Lyons* (1956) 47 Cal.2d 311, 320 [303 P.2d 329].)

Appellant's alternative contention that the evidence fails to support an intentional infliction of bodily injuries, is subject to summary disposition. ■ It is black-letter law that a party is presumed to intend to do that which he voluntarily or wilfully does in fact do and also presumed to intend the natural, probable and usual consequences of his

own acts. In accordance therewith, it has been stated when one person assails another violently resulting in injury, the presumption is that the assailant intended the great bodily injury. (*People* v. *Renoso* (1952) 109 Cal.App.2d 793, 796 [241 P.2d 628]; *People* v. *Owens* (1938) 27 Cal.App.2d 606, 610-611 [81 P.2d 429].)

### III

*The Trial Court Was Not Required
to Give Reasons for Imposing
Sentence on the Enhancement
Findings*

Appellant next argues that the trial court erred by failing to give reasons for imposing additional punishment pursuant to section 12022.7 (infliction of great bodily injury, three years), and section 667.5, subdivision (b)[8] (prior conviction, one year). Appellant reasons that the trial court is obliged by statute to state the reasons for its sentence choice (§ 1170, subd. (c)),[9] which is defined as "selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial." (Cal. Rules of Court, rule 405(f).) Since the enhancement clause could have been stricken (§ 1170.1, subd. (g)),[10] appellant argues that the imposition of additional punishment was a "sentence choice" which should have been explained for the record. Appellant's contention must be rejected for two simple considerations.

First, the enhancement provisions of both sections 12022.7 and 667.5, subdivision (b), are not optional, but strictly mandatory, requiring the imposition of additional prison terms if the statutory conditions

---

[8]Section 667.5, subdivision (b) provides that: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, *the court shall impose a one-year term for each prior* separate *prison term served for any felony*; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction." (Italics added.)

[9]Section 1170, subdivision (c) provides in part that: "The court shall state the reasons for its sentence choice on the record at the time of sentencing."

[10]Section 1170.1, subdivision (g) sets forth that: "Notwithstanding any other provision of law, *the court may strike the additional punishment for the enhancements provided in Sections 667.5, 12022, 12022.5, 12022.6, and 12022.7* if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Italics added.)

of such enhancements exist (see code sections, *supra*). When stated in another way, this means that in such instances, in essence, there is no sentence choice. Secondly, the reasons for imposing the additional terms must, of necessity, appear in the record (i.e., a jury finding that the allegation of infliction of great bodily injury in the commission of a felony is true; or in case of enhancement for prior conviction, the jury finding or the defendant's admission of the prior) because but for such reasons the trial court is powerless to impose any enhanced punishment.

We observe in passing that the examples referred to by appellant in which the court must state its reasons for its sentencing or other ruling (i.e., imposition of consecutive sentences; striking of various findings under § 1385; striking the additional punishment under § 1170.1, subd. (g), *supra*), are instances where the court has *discretion* to act. It goes without saying that in such cases the setting out of the reasons for exercising discretion is crucial for uniformity of sentences and/or meaningful appellate review to determine whether the trial court has abused its discretion. By contrast, the same reasons do not obtain where as in the instant case, the imposition of a given sentence or enhancement is mandatory and preconditioned on certain findings which must appear as a matter of record.

## IV

### *The Brigham Error Was Harmless*

Citing *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100], appellant in his supplemental brief, raises the issue that the trial court committed prejudicial error by instructing the jury per former CALJIC No. 22.[11]

In *Brigham*, the California Supreme Court disapproved former CALJIC No. 22, on the ground that it "may allow a juror to conclude that he or she could return a guilty verdict based on a strong and convincing belief which is something short of having been 'reasonably persuaded to a near certainty.'" (*Id.*, at p. 291.) Although the Supreme Court made its holding retroactive (p. 292, fn. 15), we are persuaded

---

[11]The erroneous instruction given to the jury read as follows: "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Moral certainty is required, which is that degree of proof which produces conviction in an unprejudiced mind."

the error complained of by appellant must be held harmless for two major reasons.

One, it is elementary law that the correctness of an instruction is to be determined in its relation to other instructions and in light of the instructions as a whole. (*People* v. *Wingo* (1973) 34 Cal.App.3d 974, 979 [110 Cal.Rptr. 448]; *People* v. *Rhodes* (1971) 21 Cal.App.3d 10, 21 [98 Cal.Rptr. 249]; *People* v. *Shaw* (1965) 237 Cal.App.2d 606, 623 [47 Cal.Rptr. 96].) In the case at bench, the jury was given CALJIC No. 2.90, which correctly defined reasonable doubt.[12]

Two, and even more significantly, the evidence as a whole leaves no doubt that appellant was guilty of the offense of which he was convicted. In a nutshell, the record shows beyond any doubt that appellant was in a toilet stall where the two stolen purses were found. Ms. Moseman saw his legs in the stall, and eyewitness Welch actually observed appellant as he, together with Lewis, went through the contents of the stolen purses. Since there was no question about appellant's identity, the stolen nature of the purses and appellant's actual possession thereof, it is not reasonably probable that a verdict more favorable to appellant would have been reached in the absence of the claimed instruction error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Brigham, supra*, 25 Cal.3d at p. 292.)

V

*Disposition of Appellant's Claim*
*Regarding Good Time/Work Time*
*Presentence Credit*

Appellant contends that section 4019 entitles him to credit for "good time/work time," in addition to the time already credited against his sentence pursuant to section 2900.5, for time spent in presentence custody attributable to the charges of which he stands convicted.

---

[12]The jury was instructed that: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

Subject to his showing eligibility for this credit in point of fact, he is entitled to it as a matter of law. (*People* v. *Sage* (1980) 26 Cal.3d 498 [162 Cal.Rptr. 450, 606 P.2d 757].) This conclusion requires the remand ordered below.

The judgment of conviction is affirmed. The cause is remanded to the trial court with directions to determine any additional sentencing credit to which appellant is entitled consistent with the views expressed in this opinion, to resentence him as necessary, and to modify the abstract of judgment accordingly. The court is further directed to transmit a certified copy of any modified abstract of judgment to the Department of Corrections and other appropriate authorities.

Christian, J., and Poché, J., concurred.