Filed 12/5/13  P. v. Roberson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>OGES ROBERSON,<br><br>     Defendant and Appellant. | A136135<br><br>(Marin County Super. Ct.<br> No. SC175203) |

On April 11, 2012, two unidentified men were seen on video monitors committing a burglary at an Autodesk building in San Rafael.  Police officers responded and saw a sedan with four men leaving the scene about 2:00 a.m.  The car sped away and the police pursued, but lost sight of the car. At 3:30 a.m., a police officer observed a car turn the wrong way onto a one-way street and commenced a pursuit of the vehicle, which entered Highway 101 in the southbound lanes.  During the pursuit, the car made a U-turn on the freeway, threatening a head-on collision with one of the pursuing police vehicles.  The car went off the roadway into a muddy ditch.  Oges Roberson, in muddy pants and shoes, was arrested nearby.  Two other men, similarly muddy, were also apprehended.  The car was a rental vehicle for which Roberson was an authorized driver.  It contained items that had been taken from Autodesk, as well as some of Roberson's personal papers.

Roberson was tried by a jury, which found him guilty of commercial burglary (Pen. Code, § 459),[1] receiving stolen property (§ 496, subd. (a)), and evasion of a peace

---

[1]  Unless otherwise indicated, statutory references are to the Penal Code.

1

officer with willful or wanton disregard for the safety of other persons or property (Veh. Code, § 2800.2, subd. (a)).

Roberson contends that the People presented insufficient evidence to sustain his conviction on any of these counts. He also argues that the court erred in failing to instruct the jury on the lesser included offense of misdemeanor evasion of a peace officer (without willful or wanton disregard for safety). Finally, he contends, and the People concede, that the court erred in the sentence that it imposed, by making the sentences on two of the charges, which were to be served concurrently, consecutive to the sentence on another charge, contrary to section 654.

We conclude that substantial evidence supported Roberson's conviction on the commercial burglary and receiving stolen property counts. However, we conclude that substantial evidence did not support a finding of guilt on the charge of evasion with willful or wanton disregard for safety, which was based on the theory that it was the natural and probable consequence of aiding and abetting the burglary or receiving stolen property. Instead, we find that the evidence supports only a finding of guilt for the lesser included offense of misdemeanor evasion and we amend the judgment to reflect that conclusion and remand for resentencing.

Finally, we agree with the parties that the trial court erred in sentencing Roberson. On remand for resentencing, the trial court can ensure that the error does not recur.

**BACKGROUND**

## I. *Procedural Background*

The People charged Roberson in a first amended information, filed on April 16, 2012, with the following offenses: (1) felony assault with a deadly weapon (a motor vehicle) upon a peace officer (§ 245), subd. (c)); (2) felony evading a peace officer with willful or wanton disregard for safety (Veh. Code, § 2800.2, subd. (a)); (3) felony commercial burglary (§ 459); (4) felony receiving stolen property (§ 496, sub. (a)); and (5) misdemeanor hit and run driving (Veh. Code, § 20002, subd. (a)). Before trial, count five was dismissed on the People's motion in the interest of justice.

2

The information also alleged that Roberson had two prior felony strike convictions 19 years earlier for robbery (§ 211) and assault with a deadly weapon (§ 245, subd. (a)(2)). In addition, the information alleged that Roberson was ineligible for probation because: (1) he used a deadly weapon (a car) in count one (§ 1203, subd. (e)(2)); and (2) he had six prior felony convictions (§ 1203, subd. (e)(4)). Finally, the information alleged that for three of his prior felony convictions, Roberson had not remained free of prison custody for five years between prison terms, rendering him eligible for sentencing enhancements under section 667.5, subdivision (b).

A trial by jury commenced on April 13, 2012. On April 20, 2012, the jury found Roberson not guilty on count one and guilty on counts two, three, and four. Trial on the prior convictions was bifurcated and Roberson waived his right to a jury trial for that phase of trial. On April 24, 2012, the trial court found to be true: four of the six charged prior felony convictions, pursuant to section 1203, subdivision (e)(4); one prior strike, pursuant to section 1170.12; and Roberson's three prior prison terms, pursuant to section 667.5, subdivision (b).

On June 13, 2012, the trial court sentenced Roberson to prison for a term of six years four months. The term was comprised of the mid-term of two years for count 2, doubled to four years as a result of the prior strike; a four-year sentence for count 3, with 32 months stayed, to be served consecutively; a four-year sentence for count 4, to be served concurrently with the sentence for count 3; and a consecutive one-year term, pursuant to section 667.5, subdivision (b).

Roberson filed a timely notice of appeal on July 12, 2012.

## II. *Factual Background*

On April 11, 2011, about 1:45 a.m., Robbie Munoz was observing security video monitors at Autodesk in San Rafael. He saw two African-American men in black hoodies and pants going up and down a stairway area carrying electronic equipment. Munoz could not make out the facial features of either man.[2] Munoz called the police

---

[2] The security system provided only a live feed and did not record.

department and Ramon Cabrera, a security employee of Autodesk, went to the area to investigate, discovering a broken window that appeared to be the point of entry. Cabrera found electronic equipment that had been moved and damaged inside the building; other items, including a laptop computer and a hat, were on the ground outside. Autodesk suffered about $10,000 in property damage and loss.

The first two police officers to respond arrived close to 2:00 a.m. in separate patrol cars. Each saw a newer model dark sedan of undetermined make and model driving away from the area. Officer Kevin MacDougald slowed down, turned his spotlight on the car, and saw four African-American men inside. The car departed "at a very high rate of speed." The other officer, Ronda Reese, saw a driver and one or more passengers in the car, but could not identify the occupants. Both officers activated their sirens and emergency lights and gave chase, but the car did not stop and they soon lost sight of it.

About 3:30 a.m., MacDougald, on routine patrol, saw a car turn the wrong way onto a one-way street in downtown San Rafael. He activated his emergency lights and siren and followed the car, which accelerated away from him onto the freeway, heading southbound on Highway 101 "at a high rate of speed." They reached speeds of over 90 miles per hour. The car made a U-turn and began traveling back, in the wrong direction, in the fast lane of the freeway. MacDougald immediately stopped and advised other officers of the events.

Officer Justin Graham had joined the car chase and was driving his patrol car, with emergency lights and siren activated, southbound on the freeway when he saw the car's headlights coming towards him. He began to do "a left to right zigzag pattern" for "a couple of seconds, several seconds"—actions that the oncoming driver appeared to mimic. At the last moment, Graham turned hard right onto the shoulder to avoid a head-on collision, hitting the embankment with his push bumper. Graham stated that he had slowed to about 10 to 15 miles per hour and the oncoming car was about one car length away when he made his final maneuver.

MacDougald, in the meantime, had returned to the northbound freeway and, as he crested a hill, saw "headlights bouncing" off the roadway. MacDougald went to the

4

scene and found an abandoned dark blue Volkswagen Jetta, mired in a ditch, tilted on its passenger side—the same vehicle he had been chasing. The area where the Jetta came to rest was wet and muddy.

Reese arrived at the scene shortly thereafter, and found the Jetta unoccupied but with the engine still running. Reese said the Jetta was "very similar" to the car she tried to follow from the Autodesk burglary earlier that morning. She found a monitor on the back seat, two laptop computers under a leather jacket on the back seat, and a router on the front seat. Reese also found a vodka bottle, a black knit cap, a cell phone, and a rental agreement from Enterprise Rent-A-Car. In the trunk she found papers including a vehicle title, a cell phone bill, hospital records, a parking violation notice, and a printout from a social security office, all bearing Roberson's name, and indicating that he resided in Oakland. MacDougald noted that the driver's seat was pushed all the way to the rear and reclined.

Meanwhile, after avoiding a collision with the oncoming car, Graham exited the freeway, reentered in the northbound lanes, and exited again after hearing MacDougald's report about the Jetta. Graham observed a "heavy-set" male on a nearby local street walking from the direction of the abandoned Jetta. The man had stopped on the center median and his clothing appeared to be wet and had "landscaping debris." Graham headed the man off with his vehicle and directed the man, whom he identified as Roberson, to lie on the ground. Roberson complied. MacDougald and another officer assisted Graham in placing Roberson in custody. Roberson is six feet, two inches tall and weighs 285 pounds.

At 7:11 a.m., Officer Henry Tirre responded to a report that two men had gone to a residence in San Rafael, where they stated that their car had broken down and asked the residents to call a taxi. The residents, located about two blocks from the site where the Jetta left the roadway, were suspicious and called the police. The men boarded a taxi at a nearby store, but Tirre stopped the taxi and detained the men, identified as Morgan Saint Thomas and Gregorio Yarborough. Both men had wet, muddy pants. Yarborough was

six feet, one inch tall and weighed 180 pounds. Saint Thomas was five feet, eleven inches tall and weighed 160 pounds.

An Autodesk manager identified the laptops and router located in the Jetta as belonging to Autodesk.

The Jetta had been rented to Michael Benson,[3] with Roberson listed as a secondary driver. Before adding a secondary driver, Enterprise requires that the person present a driver's license to confirm his or her identity.

The police obtained only a few usable fingerprints from Autodesk, the Jetta, and the property found in the Jetta. There were eight impressions matched to Saint Thomas. No prints were matched to Roberson, Benson, or Yarborough.

The defense presented the testimony of accident investigation and reconstruction expert Vernell Hance, who testified that, based on his recreation of the seat position he observed in photographs of the Jetta, the seat was not in the full rearward position. From the position of the seat, a person between the heights of five feet, ten inches and six feet, two inches could have driven the Jetta. Hance also testified that the Jetta could not have been nearly as close to Graham's car as the officer indicated in his testimony because, at such a close distance, a collision between the two vehicles would have been unavoidable.

## DISCUSSION

Roberson contends that the People presented insufficient evidence supporting his conviction for any of the charges against him. He also alleges instructional error and sentencing errors on the part of the court.

### I. *Legal Standard*

" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.

---

[3] The parties stipulated that Benson had a lengthy history of arrests and convictions, largely comprised of theft offenses, and including many burglaries.

6

[Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, quoting *People v. Jones* (1990) 51 Cal.3d 294, 314.)

## II. *Burglary and Evading with Willful or Wanton Disregard for Safety*

The direct evidence concerning the burglary at Autodesk, the initial car chase from the scene of the burglary, and the later car chase, with the Jetta driven the wrong way on Highway 101 and threatening a head-on collision with a police vehicle, is undisputed. The question before us is whether a trier of fact could rationally draw inferences from that direct evidence that would establish Roberson's criminal liability for the counts of commercial burglary and evading a peace officer with reckless driving.

## A. *Liability as a Principal*

The security officer at Autodesk saw two African-American men inside the burglarized building, but was unable to further describe the men. One police officer saw four African-American men inside the Jetta as it left the scene of the burglary. This is not substantial evidence that Roberson, if he was present, was one of the men who entered the Autodesk building.

There is no direct evidence that Roberson was the driver of the rented Jetta at any point during the time at issue. The officer who saw four men in the Jetta when it left Autodesk offered no identification or distinguishing characteristics of the driver. Following the car chase on Highway 101, a jury could reasonably conclude that because they were found nearby in muddy clothing, Roberson, Yarborough, and Saint Thomas, at least, had been present in the Jetta during the chase, but no evidence, beyond the fact that Roberson was listed as a secondary driver on the rental agreement, indicates that Roberson, rather than one of the other occupants, had been driving. During sentencing,

7

the court stated: "I don't think the jurors know who the driver of the car was. I don't think the evidence was conclusive enough . . . ."

During deliberations, the jury queried the court: "Count 1 [¶] Does he have to be the driver to be guilty?" In response, the court told the jury that their question was answered in the instructions they had been given and pointed out specific instructions for their review. The jury ultimately acquitted Roberson on count one (assault on a peace officer). Because the evidence was overwhelming that whoever drove the Jetta did commit an assault on a peace officer, this is a strong indication that the jury was not able to determine from the evidence that Roberson was the driver of the Jetta.

Finally, the People concede that it is unlikely that the jury could rationally have concluded that Roberson was a principal in the burglary: "[The People acknowledge] . . . that because there were likely more than two men in the Jetta but only two men entered Autodesk and the evidence is unclear as to whether [Roberson] was one of them, [Roberson's] criminal liability was likely that of an aider and abettor." Further, the People acknowledge the trial court's observations on the evidence concerning whether Roberson was the driver and concede that Roberson's "criminal liability [for the count of evading with willful or wanton disregard for safety] was predicated on the violation of Vehicle Code section 2800.2 being a natural and probable consequence of the burglary."

We conclude that there was insufficient evidence to establish that Roberson was criminally liable as a principal on the counts of burglary and evading with willful or wanton disregard for safety.

**B. *Aider and Abettor Liability for the Burglary***

"Aider-abettor liability exists when a person who does not directly commit a crime assists the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 407.) "Presence at the scene of a crime, alone, is insufficient to establish aiding and abetting liability." (*People v. Em* (2009) 171 Cal.App.4th 964, 970.) However, "among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime,

8

companionship, and conduct before and after the offense." (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094; accord, *People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

Roberson was found near the Jetta, which contained personal papers belonging to him, an hour and a half after the burglary at Autodesk. This is substantial evidence that Roberson had been in the car at the time the Jetta left the Highway 101 roadway. Because the events at issue took place in the middle of the night, between 2:00 a.m. and 3:30 a.m., and because Roberson resided in Oakland and not in San Rafael, the jury could reasonably conclude that Roberson was already a passenger in the Jetta when the burglary was committed. Thus, substantial evidence supports Roberson's presence in the Jetta at the time of the burglary.

Even if Roberson was not driving the vehicle during the period at issue, there was substantial evidence that Roberson had an ongoing association with the Jetta. He was named as an authorized driver on the rental agreement for the vehicle. The presence of his personal papers in the trunk of the car, including a vehicle title, were, as the prosecution argued to the jury, of a nature unlikely to be left "in the back of a vehicle that you are just kind of out in for the evening." Even though Benson was the person who actually rented the car, the jury could reasonably conclude that Roberson's association with the vehicle was substantial enough that he supplied the vehicle that was used in the commission of the burglary, or at least acquiesced in its use. Further, the jury could reasonably conclude that Roberson was aware of the criminal intent of the principals in the burglary, there being no reasonable innocent scenario in which the car would be at the Autodesk building in the middle of the night.

We conclude that the evidence was sufficient for the jury to find that Roberson had knowledge of the intent to burglarize Autodesk and that he intended to, and did, aid and abet that burglary by, at least, acquiescing in the use of the vehicle that was used to transport the principals of the intended offense to Autodesk and to transport them and the stolen items from Autodesk.

9

**C.** *Violation of Vehicle Code Section 2800.2 as a Natural and Probable Consequence*

**1.** *Sufficiency of the Evidence*

"A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable." (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1133.) "Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' " (*People v. Medina* (2009) 46 Cal.4th 913, 920.) "In criminal law, as in tort law, to be reasonably foreseeable '[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough . . . .' " (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 535, quoting 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 132, p. 150.) "A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a factual issue to be resolved by the jury." (*Medina*, at p. 920.)

We believe that a rational jury could readily find that when a vehicle is used in the commission of a felony, it is reasonably foreseeable that the driver of the vehicle might attempt to evade police officers who pursue the vehicle. The crucial question we face is whether, having found Roberson to be an aider and abettor of the commercial burglary and receipt of stolen property, the factual circumstances support a conclusion by the jury that it was also reasonably foreseeable that, while evading the police, the vehicle would be driven "in a willful or wanton disregard for the safety of persons or property." (Veh. Code, § 2800.2, subd. (a).) The parties do not offer, nor have we found, prior cases in which a violation of Vehicle Code section 2800.2 has been proposed as a natural and probable consequence of another felony.

10

We find the People's argument that a violation of Vehicle Code section 2800.2 was foreseeable to be unpersuasive. The People write: "To be guilty of a violation of [Vehicle Code] section 2800.2, the driver's conduct in taking high speed evasive action on both local streets and the freeway was sufficient. It did not require the potentially deadly act of driving the wrong way on a freeway. [Citation.] After one reckless escape from pursuing police officers following the commission of a burglary, it was reasonably foreseeable that the driver of the vehicle, when police later attempted to stop the vehicle, would again attempt to elude the pursuing officers while driving with a 'wanton or willful disregard for the safety of persons or property.' " At trial, the prosecutor argued similarly.

The People seem to be arguing that a violation of Vehicle Code section 2800.2 during the second car chase, in which the Jetta drove the wrong way on Highway 101, with obvious wanton disregard for the safety of others, was foreseeable to Roberson because the driver violated Vehicle Code section 2800.2 during the initial car chase, immediately following the burglary at Autodesk. However, the only evidence concerning the driving during the initial pursuit was that it occurred at a high rate of speed. The People provide no authority for the proposition that breaking the speed limit, while evading police officers, without other facts, is sufficient to constitute a violation of Vehicle Code section 2800.2. [4] Thus, we are unable to conclude that the evasion with willful or wanton disregard for safety that occurred during the later pursuit became foreseeable to Roberson after the initial pursuit.

---

[4] Vehicle Code section 2800.2, subdivision (b), provides: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." Because simple speeding, without other facts to show that the speeding demonstrated a willful or wanton disregard for the safety of others, would constitute only one of the three violations required by Vehicle Code section 2800.2, subdivision (b), we would be unable to find that substantial evidence supports a conclusion that a violation of Vehicle Code section 2800.2 occurred during the initial pursuit from Autodesk.

11

The People cite to no circumstances of this case that point to the foreseeability of evasion with willful or wanton disregard for safety at the time when Roberson aided and abetted the burglary, or during the continuing crime of receiving stolen property. We conclude that insufficient evidence supported a finding by the jury that Roberson was guilty of a violation of Vehicle Code section 2800.2 by operation of the doctrine of natural and probable consequences.

**2. *Instructional Error***

Roberson contends that the court erred by failing to instruct the jury on the lesser included offense of misdemeanor evasion without willful or wanton disregard for safety. (See Veh. Code, § 2800.1; *People v. Springfield* (1993) 13 Cal.App.4th 1674, 1679-1680.) The People oppose Roberson's contention, arguing that because there was no dispute that the driver of the Jetta showed a willful or wanton disregard for safety, there was " 'no evidence that the offense was less than that charged,' " and, thus, no duty on the part of the trial court to instruct on a lesser included offense.

We disagree with the People's position. When a jury considers liability under the natural and probable consequences doctrine, it must determine not only that someone whom the defendant aided and abetted committed the non-target offense, but also that the non-target offense was foreseeable to the aider-abettor. This involves determining that each of the elements of the non-target offense was foreseeable and, obviously, the facts may be such that the jury could reach different conclusions about different elements. When a lesser included offense is contained within the non-target offense, the jury might conclude that the elements of the lesser included offense were foreseeable, but not one or more of the additional elements required for the non-target offense.

The trial court has a duty to instruct on lesser included offenses when the evidence raises a question as to whether all the elements of the charged offense were present. (*People v. Smith* (2013) 57 Cal.4th 232, 239.) Even though it may be clear, as it is here, that all the elements of the charged offense were present with regard to the direct perpetrator, the evidence may raise a question as to whether all the elements were foreseeable to the aider-abettor. In that case, the trial court has a duty to instruct the jury

12

on the lesser included offense and to explain what the jury's choices are when considering application of the natural and probable consequences doctrine. (See *People v. Huynh* (2002) 99 Cal.App.4th 662, 681 [concluding that because target offenses of conspiracy to commit an assault and a battery could be misdemeanors, the trial court should have instructed sua sponte on involuntary manslaughter, a lesser included offense of murder].)

Because we have already determined that insufficient evidence established foreseeability that the evasion in this case would be conducted with willful or wanton disregard for safety, we conclude that the trial court erred in not instructing the jury on the lesser included offense of misdemeanor evasion, a violation of Vehicle Code section 2800.1.

**3. *Remedy***

Evasion of the police was foreseeable when Roberson aided and abetted the burglary and received stolen property, but insufficient evidence established foreseeability that the evasion would be conducted with willful or wanton disregard for safety. Although the evidence did not establish that Roberson was liable for a violation of Vehicle Code section 2800.2, there was sufficient evidence that Roberson was liable for a violation of Vehicle Code section 2800.1 (misdemeanor evasion of a peace officer), a lesser included offense of Vehicle Code section 2800.2. Accordingly, as authorized by Penal Code section 1181, subdivision (6), we modify the judgment to show a conviction for a violation of Vehicle Code section 2800.1, rather than for a violation of Vehicle Code section 2800.2. The case is remanded to the trial court for resentencing in accordance with the amended judgment.

**III. *Receiving Stolen Property***

"A conviction for receiving stolen property cannot withstand appellate scrutiny unless substantial evidence was presented to the trier of fact that (1) the property was received, concealed, or withheld by the accused; (2) such property had been obtained by theft or extortion; and (3) the accused knew that the property had been so obtained." (*People v. Kunkin* (1973) 9 Cal.3d 245, 249.) "While it has been stated that the mere

13

presence near the stolen property and/or access thereto by itself is not sufficient to sustain a conviction for receiving stolen property and that in order to convict the defendant dominion and control must be shown [citations], it is well settled that the possession of the stolen item need not be exclusive and that possession may be established by both direct and circumstantial evidence and reasonable inferences drawn from such evidence." (*People v. Johnson* (1980) 104 Cal.App.3d 598, 606.)  While dominion and control cannot be inferred from mere presence or access, "the necessary additional circumstances may, in some fact contexts, be rather slight."  (*People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.)

As we discussed above, substantial evidence supported a finding that Roberson aided and abetted the burglary at Autodesk and an inference that he was present during the burglary and was in the Jetta when it left the Highway 101 roadway.  It is undisputed that items stolen from Autodesk were present in the Jetta.  Thus, the jury had before it substantial evidence that the property in question had been obtained by theft and that Roberson was aware of that fact.  Roberson disputes that substantial evidence supported the first element of the offense:  "No evidence established that [Roberson] himself handled, possessed, or knowingly intended to make away with the stolen property. . . . His mere vicinity to the stolen property . . . was insufficient . . . ."

What Roberson overlooks in his argument is the same factor that supports a finding that he aided and abetted the burglary—his connection to the automobile was substantial enough for the jury to conclude that he had some measure of control in how it was used, whether or not that control was exclusive and whether or not he was driving. The jury could reasonably conclude that acquiescing in the transportation of stolen property in an automobile over which he had a measure of control demonstrated the requisite dominion and control over the stolen property.

We conclude that substantial evidence supported Roberson's conviction on the charge of receiving stolen property.

**IV.** *Sentencing Error*

Roberson also contends that it was error for the trial court to impose a sentence for the charges of burglary and receiving stolen property that was consecutive to the sentence for the charge of evading with willful or wanton disregard for safety. He contends that the sentences for the burglary and possession of stolen property counts should have been stayed pursuant to section 654. Without agreeing with what they characterize as Roberson's "broad reasoning," the People "agree with his conclusion."

Section 654, subdivision (a), provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

In *People v. Bradley* (2003) 111 Cal.App.4th 765, 769-770 (*Bradley*), the court held that when guilt on one offense is premised solely on it being the natural and probable consequence of another offense, the defendant may lack the independent objective or intent necessary to impose consecutive sentences on the two offenses, and section 654 requires that the lesser of the two sentences be stayed. The People "find *Bradley* to be indistinguishable and concede that the matter should be remanded for resentencing."

Because we have reduced the conviction for violation of Vehicle Code section 2800.2 to a conviction for a misdemeanor violation of Vehicle Code section 2800.1, a remand for resentencing is already part of our disposition. On remand, the burglary or receiving stolen goods count will provide the longest potential term of imprisonment. We agree with the parties that *Bradley* applies in this case and, on resentencing, would prohibit the imposition of a consecutive sentence for the violation of Vehicle Code section 2800.1.

15

## DISPOSITION

The judgment is amended to replace the conviction for a violation of Vehicle Code section 2800.2 with a conviction for a violation of Vehicle Code section 2800.1. In all other respects, the judgment is affirmed. The case is remanded to the trial court for resentencing in accord with this opinion.

_____
Brick, J.*

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16