Filed 12/2/14  P. v. Ezazi CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065328 |
| Plaintiff and Respondent, | |
| v. | |
| ORANG EZAZI, | |
| Defendant and Appellant. | (Super. Ct. No. SCD242536) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.   Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Ezazi guilty of battery with serious bodily injury. (Pen. Code,[1] § 243, subd. (d); count 2.) The jury also convicted Ezazi of willful cruelty to an elder under circumstances not likely to produce great bodily injury. (§ 368, subd. (c); count 1.) However, the jury acquitted Ezazi of the greater included offense of willful cruelty to an elder under circumstances likely to produce great bodily harm. (§ 368, subd. (b)(1); count 1.)

The court placed Ezazi on formal probation for five years. The conditions of probation required Ezazi to serve 365 days in the custody of the sheriff with credit given for 76 days custody credits.

On appeal, Ezazi raises two issues. First, Ezazi contends the jury erred in finding him guilty of battery with serious bodily injury. Specifically, Ezazi argues there was insufficient evidence to support this finding and that the testimony provided by the People's expert medical witnesses was conflicting and inconsistent. Second, Ezazi argues that the jury's finding of not guilty on count 1 is inconsistent with its finding of guilty on count 2. We affirm the judgment.

## FACTUAL BACKGROUND

### A. Prosecution

Stephen Kuhn is a homeowner in the Rancho Penasquitos area of San Diego. Kuhn has resided in this neighborhood for approximately 20 years. Orang Ezazi is a neighbor of Kuhn and their properties share a common backyard property line. In 2004,

---

[1] Statutory references are to the Penal Code unless otherwise specified.

Ezazi and Kuhn engaged in civil litigation concerning the placement of a fence on their shared property line. However, this dispute was resolved by 2008.

On April 28, 2012, at approximately 9:15 p.m., Kuhn left his home to walk his dog around the neighborhood. Kuhn carried a flashlight in one hand to illuminate the sidewalk. Kuhn walked his dog on the opposite side of the street from Ezazi's house. A short time later, Ezazi saw Kuhn walking his dog and drove up behind him with his vehicle's horn honking and lights flashing. Ezazi pulled into his driveway, got out of his vehicle, crossed the street, and approached Kuhn.

An altercation between Kuhn and Ezazi ensued. As Ezazi approached, Kuhn swung his flashlight from left to right. Ezazi pushed Kuhn face down on to the grass. Ezazi proceeded to strike Kuhn's head with his fists several times. Kuhn attempted to get up but was told by Ezazi that if he moved he would be killed. Ezazi left Kuhn on the grass and returned to his home.

Kuhn staggered home and called 911. Paramedics arrived, placed his head in a neck brace, and transported him to Scripps Hospital in La Jolla. Kuhn was examined in the emergency room by Dr. Christopher Wiesner and diagnosed with a concussion and neck injury. During the examination, Kuhn informed Dr. Wiesner that in December 2011 he had fainted while vacationing in Mexico. Kuhn suffered a head injury as a result of the fall. For several weeks after the fall, Kuhn had severe headaches and neck pain. However, Kuhn explained to Dr. Wiesner that these symptoms had largely subsided prior to the April 2012 altercation with Ezazi. Dr. Wiesner ordered a computerized

3

tomography (CT) scan of Kuhn's head and neck. Kuhn was discharged from the hospital shortly thereafter.

On May 1, 2012, Kuhn met with his longtime personal physician Dr. Jeffrey Applestein. Dr. Applestein had been Kuhn's personal physician in San Diego for over 20 years. Dr. Applestein examined Kuhn and concluded that he was suffering from post-concussive symptoms. Dr. Applestein treated Kuhn for persistent headaches for the next nine months.

Subsequently, Dr. Applestein referred Kuhn to a neurology specialist, Dr. Michael Lobatz. Dr. Lobatz examined Kuhn and ordered an MRI and neurological testing. Dr. Lobatz diagnosed Kuhn with a mild traumatic brain injury and postconcussive symptoms stemming from the April 2012 altercation with Ezazi.

During trial, the People presented the testimony of all three physicians.

### B. Defense Evidence

At trial, the defense presented the testimony of Dr. Hossain Ronaghy. Dr. Ronaghy did not examine Kuhn after the April 2012 incident. Rather, Dr. Ronaghy reviewed Kuhn's medical history and the medical reports composed by Drs. Wiesner, Applestein, and Lobatz. Dr. Ronaghy testified that he believed there was no way to conclusively determine that Kuhn suffered postconcussive injuries as a result of the April 2012 incident. Dr. Ronaghy testified that it was equally plausible that Kuhn's postconcussive symptoms derived from his December 2011 fainting spell in Mexico.

4

DISCUSSION

I

*SUFFICIENCY OF EVIDENCE OF BATTERY WITH SERIOUS BODILY INJURY*

Ezazi first challenges the sufficiency of evidence of battery resulting in serious bodily injury. He maintains that the testimony of the People's medical experts was inconclusive and contradictory thus preventing the jury from finding that he inflicted serious bodily injury on Kuhn. Ezazi contends there was insufficient evidence to support the claim that Kuhn's postconcussive symptoms stemmed from the April 2012 altercation. Rather, Ezazi suggests that "in light of [the] conflicting testimony," the evidence implies Kuhn suffered a continuation and aggravation of a condition he incurred in December 2011. Citing *People v. Johnson* (1980) 26 Cal.3d 557, 576-577, Ezazi claims that the "evidence must be judged in light of the entire record and whether the evidence on each essential element is substantial."

However, Ezazi incorrectly interprets the standard of review for a claim of insufficient evidence. In determining the sufficiency of evidence on appeal, this court does not have license to second guess a jury's verdict. Rather, this court must review the entire record in the light most favorable to the prevailing party and determine whether it shows evidence that is "reasonable, credible and of solid value" from which a trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wader* (1993) 5 Cal.4th 610, 640; *People v. Johnson*, *supra,* 26 Cal.3d at p. 578.) The reversal of a conviction is only appropriate on grounds of insufficient evidence when "upon no

5

hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755; *People v. Daugherty* (1953) 40 Cal.2d 876, 885.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Rather, it is the exclusive province of the jury to determine the credibility of a witness or how much weight to give to their testimony. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Mayberry* (1975) 15 Cal.3d 143, 150.) Therefore, if the verdict is supported by evidence that is "reasonable, credible and of solid value" then we must defer to the trier of fact and not substitute our own evaluation of the merits, credibility, or weight of their testimony. (*Barnes*, *supra,* at pp. 303-304.) We presume in support of the judgment the existence of every fact the trier of fact could have reasonably deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

A conviction for battery with serious bodily injury requires proof of three elements. (CALJIC No. 9.12.) However, Ezazi only challenges the sufficiency of the third element, the infliction of serious bodily injury. The Legislature defines serious bodily injury for purposes of battery as a serious impairment of a physical condition, including but not limited to concussion, loss of consciousness, bone fracture, protracted loss or impairment of function of a body part, a wound requiring extensive suturing and a serious disfigurement. (§ 243, subd (f)(4).)

Ezazi contends that the testimony of Drs. Wiesner, Applestein, and Lobatz does not conclusively demonstrate that Kuhn's postconcussive symptoms stemmed from the April 2012 altercation with Ezazi. Specifically, Ezazi notes that Dr. Ronaghy's testimony

6

contradicts the People's medical experts. Dr. Ronaghy testified that in his opinion it would be difficult to determine whether Kuhn's postconcussive symptoms stemmed from the December 2011 or April 2012 incident.

Ezazi focuses on the distinction between the December 2011 and April 2012 hospitalization of Kuhn and the much shorter length of hospitalization in the latter. The December 2011 fainting incident in Mexico required Kuhn to be hospitalized and airlifted to San Diego. Moreover, Kuhn suffered from severe headaches and neck pains for weeks after the incident. On the other hand, Ezazi notes that the April 2012 incident only required Kuhn to be in the hospital for a few hours. Ezazi concedes that Kuhn has seen a resurgence of headaches, severe neck pain, and declining executive function since the April 2012 altercation. However, Ezazi attributes these to a relapse of the December 2011 symptoms.

Yet, Ezazi's argument that no reasonable trier of fact could find Ezazi guilty is flawed. Ezazi's argument requires this court to weigh the testimony of one medical expert over the testimony of three other medical experts. However, that determination is solely within the power of the "trier of fact." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The jury is free to accept the testimony of one witness and disregard the testimony of another. "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

Substantial evidence exists in the record to support the jury's finding that the April 2012 altercation inflicted serious bodily injury on Kuhn. The People presented the

7

testimony of three different physicians who had personally evaluated Kuhn.  Dr. Wiesner evaluated Kuhn the night of the April 2012 incident at the emergency room of Scripps Hospital in La Jolla.  Dr. Wiesner testified that Kuhn's symptoms were consistent with those of a patient suffering from a concussion.  Ezazi notes that the CT scans ordered by Dr. Wiesner were normal and showed no head or neck injuries.  However, Dr. Wiesner himself admitted during his testimony that concussions do not always show up on a CT scan.  Nevertheless, Dr. Wiesner explained that Kuhn's complaints of head and neck pain were consistent with those of someone who had suffered a concussion from strikes to the head.

Likewise, the testimony of Drs. Applestein and Lobatz further supports the jury's verdict that Kuhn suffered from postconcussive symptoms after the April 2012 incident. Dr. Applestein testified that the underlying symptoms suffered by Kuhn after the December 2011 incident were severely aggravated by the April 2012 altercation with Ezazi.  Kuhn complained of dizziness, forgetfulness, difficulty in keeping concentration, and difficulties in performing normal daily activities.  Dr. Applestein diagnosed these as postconcussive symptoms and referred Kuhn to a neurology specialist.

Similarly, Dr. Lobatz, a renowned neurologist, testified that after extensive evaluations and testing of Kuhn he determined that Kuhn suffered from a mild traumatic brain injury.  Dr. Lobatz explained that Kuhn's symptoms were characteristic of someone suffering from postconcussive injuries.  More importantly, Dr. Lobatz clarified that the December 2011 "fainting spell" was not connected to Kuhn's postconcussive symptoms

8

after April 2012. Rather, the December 2011 incident was related to an undiagnosed heart condition.

In sum, there was substantial evidence in the record for the jury to find that Ezazi's altercation with Kuhn caused serious bodily injury on April 28, 2012.

II

*INCONSISTENT JURY VERDICTS*

Ezazi contends that his conviction under count 2 must be reversed because of his acquittal under count 1. Ezazi asserts that both counts were based upon the same act and that a jury may not validly return inconsistent findings. We disagree.

It has long been established that an inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both. (*United States v. Powell* (1984) 469 U.S. 57, 66-67 (*Powell*); *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657; see § 954. Section 954 provides that "[a]n acquittal of one or more counts shall not be deemed an acquittal of any other count." A jury's inconsistent verdict makes it "unclear whose ox has been gored." (*Powell*, *supra,* at p. 65.)

Numerous factors may cause an inconsistent jury verdict. (*Powell, supra,* 469 U.S. at p. 65.) A jury may have considered guilt but produced an inconsistent acquittal or not true finding "through mistake, compromise, or lenity." (*Ibid.*) Likewise, because the defendant is given the benefit of acquittal, "it is neither irrational nor illogical to require

9

her to accept the burden of conviction on the counts on which the jury convicted." (*Id.* at p. 69.)

Courts must make every effort to interpret a jury's verdict as being consistent. (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685.) A jury's findings will be treated as inconsistent only if the verdicts are clearly antagonistic and absolutely irreconcilable with each other under any rational view of the evidence. (*Lowen v. Finnila* (1940) 15 Cal.2d 502, 504.)

Here, Ezazi claims that his conviction for battery with serious bodily injury is legally and factually equivalent to a finding of great bodily injury under count 1. Thus, because Ezazi was acquitted of count 1, it is contradictory that he would be convicted under count 2.

Ezazi correctly points out that some courts have found "great bodily injury" and "serious bodily injury" as being "essentially equivalent." (*People v. Burroughs* (1984) 35 Cal.3d 824, 831; *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375, citing *People v. Kent* (1979) 96 Cal.App.3d 130, 136; *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871.) However, the terms "great bodily injury" and "serious bodily injury" are not statutorily equivalent. Here, the statutory differences are important because Ezazi was charged with separate crimes.

Count 2 charged Ezazi with battery with serious bodily injury. The Legislature defines serious bodily injury as "serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring

10

extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).) On the other hand, count 1 charged Ezazi with willful cruelty to an elder under circumstances likely to produce great bodily injury. Great bodily injury is defined as "significant or substantial physical injury." (§ 12022.7, subd. (f).) Thus, unlike serious bodily injury, the definition of great bodily injury is narrower and does not include a list of qualifying injuries.

Here, the trial court provided the jury with separate instructions and separate definitions for serious bodily injury and great bodily injury. Moreover, nothing in the instructions indicated that these two definitions were legally equivalent. The propriety of jury instructions is governed by the evidence before the trial court. (*People v. Flannel* (1979) 25 Cal.3d 668, 684-685.) Ezazi's contention of inconsistency is unsupported by the trial record and evidence. The jury rationally determined that Ezazi's altercation with Kuhn caused serious bodily injury but not great bodily injury.

The People provided the testimony of three different medical experts who all concluded that Kuhn suffered a concussion during the altercation with Ezazi. They further testified that Kuhn suffered postconcussive symptoms in the months following the April 2012 incident. A concussion is clearly within the specially qualified injuries the legislature intended to be a serious bodily injury. (§ 243, subd. (f)(4).) At the same time, it is fully within the power of the jury to determine that a concussion does not rise to the level of a great bodily injury.

Therefore, the jury's finding of serious bodily injury on count 2 cannot be deemed equivalent to a finding of great bodily injury on count 1. The jury conscientiously applied the instructions given and decided that the victim's concussion did not constitute

11

a "great bodily injury."  The jury followed its instructions and reached a consistent verdict.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.