Filed 5/17/16  P. v. Ramirez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077861 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F02743) |
| v. | |
| MARK STEVEN RAMIREZ, | |
| Defendant and Appellant. | |

As a result of defendant Mark Steven Ramirez striking her, probably with a screwdriver, the victim of domestic violence in this case suffered a concussion, bled profusely all over her clothes and car, and sustained a zigzag gash on her head that penetrated the skin to the connective tissue covering the skull and required five staples to close.  A jury convicted defendant of the infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)) and battery resulting in serious bodily injury (Pen. Code, § 243, subd. (d)).  He was sentenced to a total term of 18 years in state prison, including a five-year enhancement for a prior conviction of making terrorist threats.  On appeal, defendant complains the trial court refused to instruct on the lesser included offense of simple battery and improperly imposed a five-year enhancement even though the jury found he had inflicted "serious bodily injury" rather than "great bodily injury."  We affirm.

1

# FACTS

The victim fits the sad stereotype of a battered woman. While at the hospital receiving treatment for her head wound, she told the doctor, her daughters, and the investigating police officer that defendant, angry she had been out all night, stabbed her with what she thought was a screwdriver. Her daughters, Tasha and Velecity, testified she was terrified to return to the unit she shared with defendant in a duplex in which her daughter Tasha and grandchildren also resided. Velecity testified that her mom "kept saying over and over and over again how scared she was. He kept hitting her, hitting her, and hitting her. And the blood was running down her face into her eyes." She lived with Velecity for a almost week after release from the hospital, and Velecity's husband took a week off work to be with her. Nevertheless, once she began talking to defendant again, she recanted her statements and thereafter claimed the gash was self-inflicted. It was this version of events she gave at the preliminary hearing. She then married defendant and refused to testify at trial. The transcript of the preliminary hearing was read to the jury at trial.

While driving home from San Jose at about 10:00 p.m. on March 2, 2014, Tasha received a telephone call from her mother. A few moments after they hung up, the phone rang and the display indicated it was her mother again. She was unable to get her mother to respond, but she was able to hear some of what her mother screamed, including, " Oh, God. No. Please Mark. Please don't hit me. No." Tasha continued to listen until her battery ran out. She was afraid her mother was dead. She later received a voice mail message from her mother, who indicated it was an emergency. Tasha returned her mother's call, and defendant's daughter grabbed the phone and reported that Tasha's mom was hurt pretty badly and was en route to the hospital. Tasha and Velecity went directly to the hospital to be with their mother. The victim was covered in blood and appeared to Tasha to be "out of it."

2

The emergency room doctor did not observe signs of intoxication and did not order any blood tests. He did, however, order a CT scan. The victim complained of nausea, dizziness, and blurred vision, symptoms consistent with a concussion, and the doctor wanted to assess the severity of the head injury. According to the doctor, the laceration penetrated the full thickness of the victim's scalp; Velecity testified the injury was closed with five staples. She was released from the hospital a few hours after admission.

Several weeks later the police went to the victim's duplex to serve an arrest warrant on defendant. The victim denied that defendant was in the residence. The police found him hiding under some blankets between the bed and the wall in the bedroom. The victim did not protest or claim responsibility for the infliction of the injuries at that time.

## DISCUSSION

## I

### Instruction on Lesser Included Offense of Simple Battery

Defendant was charged with and convicted of battery resulting in serious bodily injury. (Pen. Code, § 243, subd. (d).) The trial court refused his request to instruct the jury on simple battery as a lesser included offense, concluding there is insufficient evidence to support the instruction. Defendant argues that the failure to instruct on simple battery put the jury in an untenable "all or nothing" position and constituted reversible error. He insists the jury could have found the victim's head wound did not constitute a serious bodily injury and therefore that he committed simple battery. We disagree.

The trial court instructed the jury in the language of CALCRIM No. 925 as follows:

"The defendant is charged in Count 2 with battery causing serious bodily injury in violation of Penal Code section 243(d).

"To prove that the defendant is guilty of this crime, the People must prove that:

3

"1.  The defendant willfully touched [the victim] in a harmful or offensive manner; and

"2.  [The victim] suffered serious bodily injury as a result of the force used.

"Someone commits an act *willfully* when he or she does it willfully or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"Making contact with another person, including through his or her clothing, is enough to commit a battery.

"A *serious bodily injury* means a serious impairment of physical condition.  Such an injury may include:  loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement.

"The touching can be done indirectly by causing an object or someone else to touch the other person."

A trial court must instruct the jury on "any uncharged offense that is lesser than, and included in, a greater charged offense, but only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense."  (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.)  The failure to instruct on a lesser included offense that is supported by substantial evidence is usually harmless unless there is a reasonable probability that the error affected the outcome.  (*People v. Breverman* (1998) 19 Cal.4th 142, 176-177.)

There is no dispute that a simple battery is a lesser included offense of battery causing serious injury.  The question is whether a jury could find that a four-centimeter gash requiring five staples accompanied by significant bleeding and a concussion was not a serious bodily injury as explained to the jury in CALCRIM No. 925.

Defendant minimizes the wound, pointing out that it was not very deep and did not cause any permanent injury.  He attributes the victim's nausea and dizziness to

4

intoxication. Thus, in his view, the jury could have found the injury was not of sufficient gravity to constitute a serious injury. Not so.

A serious bodily injury includes a concussion and a wound requiring extensive suturing. (Pen. Code, § 243, subd. (f)(4).) According to the emergency room doctor, the victim suffered a concussion. The laceration required five staples to heal. Although there was some evidence the victim might have been drinking, neither the doctor nor the interrogating police officer observed any signs of intoxication. Both testified she appeared coherent and cooperative. She was able to answer all their questions and describe exactly what had happened to her. There were no blood tests taken. To suggest, therefore, as defendant does, that the victim did not suffer a concussion as diagnosed by the emergency room physician but that her nausea and dizziness were a result of her intoxication is pure speculation. Moreover, the doctor also determined that the gash would not heal properly without administering five staples, and a wound requiring extensive suturing constitutes a serious injury.

Given the gravity of the injury as evidenced by the concussion and suturing, there is substantial evidence defendant committed the greater offense and no substantial evidence that if the jury found he committed a battery it could have found that he did not inflict serious bodily injury. Neither protracted impairment nor disfigurement is required for serious bodily injury. (Pen. Code, § 243, subd. (f)(4).) As a consequence, we conclude the trial court properly instructed the jury on the greater offense alone.

Relying on *People v. Nava* (1989) 207 Cal.App.3d 1490, defendant argues that the victim's head injury, like the victim's fractured nose in *Nava*, may have been insufficient to sustain the great bodily injury enhancement. Defendant's reliance on *Nava* is misplaced. *Nava* involved the offense of assault by means of force likely to produce great bodily injury under Penal Code section 245, subdivision (a)(1) and merely held it was error to instruct the jury that a bone fracture constitutes a significant and substantial physical injury within the meaning of the statute. (*Nava*, at p. 1494.) There was no

5

similar instruction in this case. The court concluded that a broken bone may constitute great bodily injury, but every bone fracture does not constitute great bodily injury as a matter of law. (*Id.* at p. 1498.) *Nava* holds that a jury could reasonably sustain a great bodily injury enhancement based on a fractured nose. And where a jury makes a comparable finding, as it did here, we will not disturb it on appeal.

## II

### Right to Jury Trial on Enhancement for Inflicting Great Bodily Injury

Defendant next asserts the trial court violated his constitutional right to a jury trial by imposing a five-year serious felony enhancement under Penal Code section 667, subdivision (a). It is true that the charged felonies are not listed in the 41 categories of serious felonies set forth in subdivision (c) of section 667, but a serious felony described in subdivision (c)(8) also includes "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice . . . ." Although the jury expressly found that defendant inflicted a serious bodily injury, he complains the jury did not find that he inflicted "great bodily injury." We agree with the Attorney General that, under the facts presented here, the two concepts are synonymous and the trial court committed no error by imposing the enhancement.

Defendant argues that under the logic of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and its progeny, all facts that are legally essential to the determination of an offender's current offense must be determined by a jury. (*Id*. at p. 490; *Blakely v. Washington* (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403].) Because the trial court enhanced defendant's punishment without a jury's finding that he inflicted great bodily injury, defendant urges us to strike the five-year enhancement. He contends that the "closely analogous" United States Court of Appeals, Ninth Circuit opinion in *Dillard v. Roe* (9th Cir. 2001) 244 F.3d 758 (*Dillard*) supports his position. The facts in *Dillard* are not at all analogous. Nor did the Ninth Circuit rely on *Apprendi;* indeed, the court expressly distanced itself from the holding. (*Dillard*, at p. 773, fn. 19.) In short,

6

the case is easily distinguished and does not support the proposition that a jury finding of serious injury is not equivalent to a finding of great bodily injury.

Let us begin with the most blatant distinction. A jury convicted Dillard of inflicting corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a)), but it did not, as here, convict Dillard of battery resulting in serious bodily injury (*Dillard*, *supra*, 244 F.3d at p. 761). In order to enhance Dillard's sentence, the judge had to find he personally used a gun, a finding the jury had not made. (*Id*. at p. 771.) The Ninth Circuit concluded "that the additional fact found by the trial judge in this case is an element that transforms the offense for which Dillard was charged and convicted into a different, more serious offense that exposes him to greater and additional punishment. Accordingly, we agree with the district court that Dillard's constitutional rights were violated when the state trial judge imposed the two five-year sentence enhancements without having a jury determine beyond a reasonable doubt that Dillard 'personally used a firearm' in the commission of the offense against [the victim]." (*Id*. at p. 773.)

The jury also convicted defendant of inflicting corporal injury upon a cohabitant. But commission of that offense alone does not qualify as a serious felony and justify imposition of an enhancement. Here, unlike in *Dillard*, the jury made the critical additional finding that defendant inflicted serious injury when he battered his victim. We reject the notion that the trial court's finding that Dillard personally used a firearm is in any way similar to the court's utilization here of the *jury's finding* he inflicted serious injury and thus that he inflicted great bodily injury. *Dillard* bears no relevance to the case before us.

Because the jury, not the judge, made the essential finding upon which defendant's enhancement was based, the issue is whether a finding of "serious injury" is equivalent to a finding of "great bodily injury." Defendant insists there is a wide chasm in meaning. Persuasive authority is to the contrary. As a general rule, the terms " 'serious bodily injury' " and " ' "great bodily injury" ' " are essentially equivalent. (*People v. Wade*

7

(2012) 204 Cal.App.4th 1142, 1149; see *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871; see also *People v. Johnson* (1980) 104 Cal.App.3d 598, 610; see also *People v. Kent* (1979) 96 Cal.App.3d 130, 136-137.)

*People v. Taylor* (2004) 118 Cal.App.4th 11, cited by defendant, is an aberration. It, too, accepts the fundamental proposition that a jury finding of serious bodily injury is equivalent to a finding of great bodily injury. (*Id*. at p. 22.) The unique problem in *Taylor*, however, was that the jury found the defendant had inflicted serious bodily injury but also found, for enhancement purposes based on the same conduct, he had not inflicted great bodily injury. Faced with an express jury finding the defendant had not inflicted great bodily injury, instructions that provided different definitions for serious and great bodily injury, and the arguments of counsel distinguishing the two, the court held the imposition of the enhancement violated the defendant's right to a jury trial. (*Id*. at p. 30.)

We are not confronted with conflicting jury findings or instructions distinguishing the two concepts. To the contrary, the jury was presented with overwhelming evidence that the victim's injuries were significant and substantial. As described above, the emergency room doctor testified the victim suffered a concussion and an approximate four centimeter, Z-shaped subcutaneous laceration, which had penetrated all layers of skin down to the connective tissue on the top of her scalp. She required five staples to close the wound to her head. The jury found that these were serious injuries and they made no contrary findings, nor were there any confusing or conflicting instructions. We therefore must follow the general rule that a jury finding of serious bodily injury constitutes a finding of great bodily injury, and the five-year enhancement was not based on a finding by the court in violation of defendant's right to a jury trial.

### III

### Remand for Court to Determine Amount of Fees

Despite our admonition that "[t]he clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order and the abstract of

8

judgment" (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388), the clerk here added to the abstract of judgment the amount of fines and fees the court intended to impose by referencing a probation report despite the fact the court did not orally pronounce the fees. The Attorney General agrees with defendant that the written abstract cannot add to or modify the oral judgment it purports to reflect (*People v. Mitchell* (2001) 26 Cal.4th 181, 185) and joins in defendant's request for us to remand the matter to the trial court to orally specify the nature and amount of the mandatory restitution fee (Pen. Code, § 1202.4, subd. (b)), the parole revocation fine (Pen. Code, § 1202.45), the main jail booking fee (Gov. Code, § 29550.2), and the main jail classification fee (*ibid*.). We agree and remand the matter to cure any deficiency in the rendition of judgment for failure to specify the nature and amount of these fees and fines.

### DISPOSITION

The matter is remanded to the trial court to separately specify the nature and amount of each fine or fee it intends to impose. The trial court is further directed to amend the abstract of judgment accordingly and to send a certified copy thereof to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


                                                    RAYE          , P. J.



We concur:


        BLEASE        , J.



        MAURO        , J.

9