# IN THE SUPREME COURT OF CALIFORNIA

In re MIGUEL ANGEL CABRERA
on Habeas Corpus.

S271178

Third Appellate District
C091962

March 2, 2023

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Cantil-Sakauye* concurred.

---

\* Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Opinion of the Court by Liu, J.

During an argument at the home of a man he had met earlier that day, petitioner Miguel Angel Cabrera punched his new acquaintance in the face, causing the man to lose consciousness, fall down, and strike his head on the driveway where they stood.  Cabrera was charged with a number of offenses, among them battery with "serious bodily injury" in violation of Penal Code section 243 and allegations of inflicting "great bodily injury" in violation of Penal Code section 12022.7. The jury returned a guilty verdict on the count of battery with serious bodily injury, but it struggled to decide whether Cabrera had inflicted great bodily injury.  The jury submitted questions to the court about the differences between serious bodily injury and great bodily injury, asking whether a finding of serious bodily injury necessarily required a finding that great bodily injury occurred.  Ultimately, the jury was unable to reach a verdict on the great bodily injury allegations, and the court declared a mistrial on them.

At Cabrera's sentencing, the trial court determined that the battery charge and two related charges qualified as "serious felonies" — a finding that exposed Cabrera to an additional five-year term — because " 'there [was] great bodily injury.' " (*People v. Cabrera* (2018) 21 Cal.App.5th 470, 474 (*Cabrera*).) Cabrera argued that this finding of great bodily injury by the trial court violated the Sixth Amendment principle announced in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*):

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The sentencing court disagreed and imposed the five-year enhancement.

We granted review to consider whether the sentencing court's finding that Cabrera inflicted great bodily injury violates *Apprendi* in light of the jury's failure to reach a verdict on the great bodily injury allegations. We hold that the court's finding did violate *Apprendi* and remand this case for further proceedings consistent with this opinion.

## I.

Cabrera met Curtis Barnum in July 2006 at a bar in Siskiyou County. Barnum invited Cabrera and a few of Cabrera's friends back to his home. After they arrived at the house, Cabrera and Barnum got into an argument, which culminated in Cabrera suddenly punching Barnum in the face while they were standing in the driveway next to Barnum's truck. According to the testimony of a witness present at the time, this punch knocked Barnum "out cold on contact." Barnum collapsed and struck his head on the cement. He was unconscious for several minutes in a pool of blood about twice the size of his head. Cabrera fled, and Barnum was taken to the hospital. He received three stitches to close a one-inch laceration in the back of his head, which was necessary to control the bleeding. His treating physician testified that the wound was larger than the length of the laceration because of swelling around it, and that Barnum's skull was "easily visible within the wound." Barnum testified that he had experienced

some dizzy spells since the injury. He said he had a "little bit" of problems with headaches and they were "not bad."

Cabrera was charged with assault by means of force likely to produce great bodily injury, battery with serious bodily injury, assault with a deadly weapon, and participating in a street gang. (*Cabrera*, *supra*, 21 Cal.App.5th at p. 473.) He was also charged with gang allegations on several of the counts, allegations that he had personally inflicted great bodily injury, and having four prior convictions constituting serious felonies and strikes. (*Ibid.*)

The jury was instructed that serious bodily injury means "a serious impairment of physical condition," which "may include but is no [sic] limited to loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing and serious disfigurement." The instructions specifically stated that "[l]oss of consciousness and a wound or cut requiring extensive suturing is a serious bodily injury." The jury was also instructed that great bodily injury means "significant or substantial physical injury" and that it is "an injury that is greater than minor or moderate harm."

During its deliberations, the jury asked the court for "specific definitions of mild and moderate injury" as those terms were used in the instructions on great bodily injury. The court informed the jury that "there really are no specific definitions," and it directed the jurors to the definition in the instruction it had given. The court declined "to try to fine-tune that or define it any further," explaining that "we know of no legal definition" other than the instruction.

Two days later, the jury sent another question to the court. The jurors explained that they were "having problems reconciling the differences between great bodily injury and serious bodily injury." They asked, "If we agree the injury was severe, are we bound to agree that great bodily injury occurred?" The court referred the jurors back to the instructions defining great bodily injury and serious bodily injury, noting that "serious bodily injury is not defined exactly the same as great bodily injury" but "they are not necessarily mutually exclusive."

Later that day, the jury indicated that it had reached verdicts on the first assault charge, the battery charge, and the charge of participating in a street gang. It found Cabrera guilty of each of those counts, but it found the gang allegations not true. It found true the allegations of four prior serious felonies. The jury deadlocked on the charge of assault with a deadly weapon and on the allegations that Cabrera had inflicted great bodily injury. The court declared a mistrial on the deadlocked counts.

Cabrera's sentence depended in part on whether his convictions counted as "serious felon[ies]"; if so, because of his prior serious felonies, he faced a five-year sentencing enhancement. (Pen. Code, § 667, subd. (a)(1).) The Penal Code defines serious felonies to include "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice." (*Id.*, § 1192.7, subd. (c)(8).) The relevant provisions of the Penal Code are unchanged from the time of Cabrera's sentencing.

At sentencing, the prosecutor argued that Cabrera's charges were serious felonies because "[t]he evidence was that when the defendant swung, [the victim] went down, his knees

buckled, his head . . . hit the cement and resulted in a concussion." The prosecutor said this showed that "in fact, the defendant inflicted great bodily injury." The prosecutor also argued that great bodily injury could be inferred from the jury's finding of serious bodily injury, citing *People v. Burroughs* (1984) 35 Cal.3d 824 (*Burroughs*) and *People v. Hawkins* (1993) 15 Cal.App.4th 1373 (*Hawkins*) for the proposition that "battery with serious bodily injury is great bodily injury." Defense counsel responded that Cabrera was "entitled to a jury finding on anything that would have had the effect of making his punishment more severe." He argued that a finding by the court that Cabrera inflicted great bodily injury would "invade[] the province of the jury."

The court concluded that Cabrera's charges were serious felonies because "there is great bodily injury," citing *Burroughs* and *Hawkins*, and imposed a five-year enhancement.

On appeal, Cabrera's conviction for participating in a street gang was reversed, but he did not challenge the sentencing court's finding of great bodily injury. (*Cabrera, supra,* 21 Cal.App.5th at p. 474.) Cabrera later sought a writ of habeas corpus in the Court of Appeal, arguing that his appellate counsel's failure to challenge the great bodily injury finding constituted ineffective assistance. The Court of Appeal denied his petition in an unpublished opinion. We granted review to consider whether the sentencing court's finding of great bodily injury violated Cabrera's Sixth and Fourteenth Amendment rights under *Apprendi.*

## II.

In *Apprendi,* the United States Supreme Court held that except for "the fact of a prior conviction, any fact that increases

5

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.)  This "statutory maximum," the high court later explained, "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely v. Washington* (2004) 542 U.S. 296, 303 (*Blakely*), italics omitted.)  The elevation of a defendant's sentence based on facts that "are neither inherent in the jury's verdict nor embraced by the defendant's plea" violates "a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments."  (*Cunningham v. California* (2007) 549 U.S. 270, 274 (*Cunningham*).)

Under this principle, a judge may not find facts that increase the defendant's punishment beyond what is authorized by the "guilty verdict standing alone."  (*Ring v. Arizona* (2002) 536 U.S. 584, 605 (*Ring*).)  This is so even if the evidence clearly demonstrates the existence of the judge-found fact.  In *Ring*, for example, where the crime involved the murder of the driver of an armored bank van and the theft of more than $800,000 from the van, the sentencing court violated *Apprendi* when it found that the crime was committed "in expectation of receiving something of 'pecuniary value.' " (*Ring*, at pp. 589, 594–595.)  And it is so even if the evidence supporting the fact was presented to the jury, as long as finding the fact was not essential to the jury's verdict.  For instance, when both the charging instrument and verdict form specified that a company's conduct bearing a per-day criminal fine occurred " 'on or about' " a particular range of dates, a court's calculation of the total fine based on a finding that those dates were exact violated *Apprendi* even though evidence of the dates was presented to

6

the jury. (*Southern Union Co. v. United States* (2012) 567 U.S. 343, 346 (*Southern Union Co.*); see also *U.S. v. Southern Union Co.* (D.R.I., July 9, 2009, Cr. No. 07–134 S) 2009 WL 2032097, p. *2 [discussing evidence of daily work logs and testimony about start and end dates of conduct].) Sentencing courts may not peer behind the verdict to assess whether the evidence supports a fact not reflected in the jury's decision.

The Attorney General does not dispute that this rule applies to the finding of great bodily injury that increased Cabrera's sentence. He argues instead that the jury's finding of serious bodily injury necessarily establishes great bodily injury. He asserts that the two require the same severity of injury, with great bodily injury covering a wider range of injuries.

Serious bodily injury is defined in the Penal Code as "a serious impairment of physical condition," with further specification given in the statute by the same nonexclusive list of injuries with which Cabrera's jury was instructed: "loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (Pen. Code, § 243, subd. (f)(4).) Great bodily injury is not defined in the sections of the Penal Code that specify Cabrera's serious felony enhancement. (See *id.*, §§ 667, 1192.7.) But it is defined elsewhere as "a significant or substantial physical injury." (*Id.*, § 12022.7, subd. (f).) This provision codified the standard definition of great bodily injury and is consistent with both standard jury instructions and the instructions given in this case. (See *People v. Escobar* (1992) 3 Cal.4th 740, 748 (*Escobar*); CALCRIM No. 3160.) Accordingly, we find the definition of great bodily injury provided in Penal Code section 12022.7 appropriate here. No further specification is given in the

statute, and the standard jury instructions add only that great bodily injury is "greater than minor or moderate harm." (CALCRIM No. 3160; see also CALJIC No. 17.20 ["[m]inor, trivial or moderate injuries do not constitute great bodily injury"].)

Great bodily injury and serious bodily injury are similar terms; we have more than once called them " 'essentially equivalent.' " (*Burroughs*, *supra*, 35 Cal.3d at p. 831; *People v. Knoller* (2007) 41 Cal.4th 139, 143, fn. 2.) But we have also acknowledged that "there are some differences in the statutory definitions." (*Knoller*, at p. 143, fn. 2.) Notwithstanding their substantial overlap, "the terms in fact 'have separate and distinct statutory definitions.' " (*People v. Santana* (2013) 56 Cal.4th 999, 1008 (*Santana*), quoting *People v. Taylor* (2004) 118 Cal.App.4th 11, 24 (*Taylor*).) That much is apparent from the Penal Code's language: " '[T]he statutory definition of great bodily injury does not include a list of qualifying injuries' " like the statutory definition of serious bodily injury does. (*Santana*, at p. 1008.) For that reason, we have held that when great bodily injury is an element of an offense, a jury instruction that the crime requires serious bodily injury is erroneous. (*Id.* at pp. 1008–1010.)

Consistent with the generality of the definition of great bodily injury, we have declined invitations in the past to decide whether a particular type of injury amounts to great bodily injury as a matter of law. (*People v. Wolcott* (1983) 34 Cal.3d 92, 107.) What meets the statutory standard is a factual question for the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 64 (*Cross*); see *Escobar*, *supra*, 3 Cal.4th at p. 750 ["[T]he determination of great bodily injury is essentially a question of fact, not of law."].) There is a " ' "fine line" ' " between injuries that qualify as great

bodily injury and those " ' "that do[] not quite meet the description," ' " and "[w]here to draw that line is for the jury to decide." (*Cross*, at p. 64.) For instance, juries may evaluate a broken bone "along a continuum from a small hairline fracture, needing no medical intervention, to the compound fracture of a major bone, requiring surgical repair." (*Id.* at p. 73 (conc. opn. of Corrigan, J.).) It is the jury's responsibility to determine where along that continuum it believes the harm becomes a " 'significant or substantial physical injury' " rather than a " 'moderate' or 'minor' " one. (*Ibid.*; see *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464–465 [" 'every bone fracture' is not great bodily injury as a matter of law" but instead may be found by a jury to be great bodily injury "as a matter of fact"].)

The Attorney General argues that serious bodily injury necessarily establishes great bodily injury because the two terms "require the same threshold severity of injury" — that is, they "describe levels of physical injury that are virtually identical." The Attorney General says this follows from the language of the statutory definitions, in which "the relevant modifiers — serious, significant, and substantial — are closely analogous." But comparing the statutory text at this level of generality does not resolve whether every kind of injury that qualifies as a serious bodily injury necessarily amounts to great bodily injury. Nor is it sufficient that serious bodily injury and great bodily injury both "increase criminal punishment based on the level of injury suffered by the victim," as the Attorney General argues. A jury's finding of one fact does not authorize the sentencing court to find all others that serve a similar function in the Penal Code.

Our decision in *Santana* does not demonstrate otherwise. In *Santana*, we considered the jury instructions for the crime of

mayhem, which courts have held to include great bodily injury as an element. (*Santana, supra,* 56 Cal.4th at p. 1008.) We held it was improper to instruct a jury that serious bodily injury is an element of mayhem. (*Id.* at p. 1010.) After considering many of the differences between the definitions of great bodily injury and serious bodily injury that we discuss today, we reasoned that these distinctions "may make a difference when evaluating jury instructions that provide different definitions for the two terms," and we concluded that the definition of serious bodily injury was "imprecise and ill fitting" for the crime of mayhem. (*Id.* at pp. 1008–1009, 1010.)

Our conclusion that serious bodily injury and great bodily injury are not interchangeable in the context of the jury instructions on mayhem shows that the two terms are not equivalent as a matter of law. Indeed, *Santana*'s refusal to "conclude that the offense of mayhem includes a serious bodily injury requirement simply based on cases holding that mayhem includes a great bodily injury component" (*Santana, supra,* 56 Cal.4th at p. 1009) confirms that great bodily injury does not establish serious bodily injury and says nothing about whether serious bodily injury establishes great bodily injury.

The history of the enactment of the great bodily injury definition does not support the view that a finding of serious bodily injury necessarily establishes great bodily injury. We discussed this history at length in *Escobar*, noting that the original version of the section of the Penal Code describing great bodily injury defined it differently than the current law. That version of the statute declared great bodily injury to mean " ' "a serious impairment of physical condition" ' " — the same language the Penal Code uses to define serious bodily injury — and provided a list of specific injuries that generally paralleled

10

the injuries listed in the serious bodily injury provision. (*Escobar*, *supra*, 3 Cal.4th at p. 747.) However, several of the listed injuries were more restrictive, requiring, for example, " ' "[*p*]*rolonged* loss of consciousness" ' " or " ' "[*s*]*evere* concussion," ' " and the statute did not include the language from the serious bodily injury provision that makes the list of injuries in that section nonexclusive. (*Ibid.*, italics added.)

Before this version went into effect, the law was amended twice to make "a number of significant alterations to the definition of great bodily injury." (*Escobar*, *supra*, 3 Cal.4th at p. 747.) The list of qualifying injuries was deleted and the remainder of the definition was changed "from a 'serious impairment of physical condition' to 'a significant or substantial physical injury,' " the phrasing that appears today. (*Ibid.*) We determined in *Escobar* that these amendments were meant "to discard the original, detailed definition of great bodily injury and substitute the more general standard" that was drawn from jury instructions on great bodily injury in use at the time the law passed. (*Id.* at p. 748, italics omitted; cf. *People v. Richardson* (1972) 23 Cal.App.3d 403, 411 [approving " ' "significant or substantial" ' " instruction]; *id.* at p. 409 [finding that great bodily injury did not occur when victim experienced "one blow on her back and neck, which she described as 'terrific' " and which may have caused brief loss of consciousness].)

The Legislature thus replaced a definition narrower than serious bodily injury with more general language. The Attorney General argues from this history that "the Legislature intended great bodily injury to cover a broader range of injuries than serious bodily injury." *Escobar* makes clear that the Legislature intended the amended great bodily injury statute to cover a

broader range of injuries than the previous version of the law. (See *Escobar*, *supra*, 3 Cal.4th at p. 750 [the amended "standard contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function"].) But amending the definition of great bodily injury to use more generic terms does not show that the Legislature must have intended it to be equivalent in severity to the injuries that might constitute serious bodily injury, such that a finding of serious bodily injury necessarily establishes great bodily injury. Indeed, even under the original version of the bill — which defined great bodily injury in a manner similar to serious bodily injury — the Legislature saw the two terms as distinct. The original version would have imposed the enhancement on any person who "intentionally inflicts serious *or* great bodily injury on any person other than an accomplice." (Assem. Bill No. 476 (1977–1978 Reg. Sess.) § 94, as introduced Feb. 10, 1977, italics added.) The use of both terms suggests they had different meanings.

That great bodily injury and serious bodily injury are distinct is also consistent with the history of the definition of serious felony provided in Penal Code section 1192.7, subdivision (c). The current definition of serious bodily injury was added to the battery statute in 1975. (Sen. Bill No. 554 (1975–1976 Reg. Sess.).) Battery with serious bodily injury was thus an established crime at the time section 1192.7 was added to the Penal Code seven years later in 1982 through a voter initiative. We have previously noted that the "list of serious felonies enumerated in section 1192.7 appears to be based largely upon" a provision enacted that same year that "included a list of 26 'violent offenses.'" (*People v. Jackson* (1985) 37 Cal.3d 826, 831.) Yet despite the fact that the definition of

serious felony provides a long list of qualifying offenses, battery with serious bodily injury was never designated as one. (See Pen. Code, § 1192.7, subd. (c)(1)–(42).) Moreover, the definition of serious felony at issue here — "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice" — does not use the phrase "serious bodily injury," even though the phrase had been defined years before section 1192.7 was added to the Penal Code. (Pen. Code, § 1192.7, subd. (c)(8).) These omissions do not support the Attorney General's assertion that a finding of serious bodily injury necessarily establishes great bodily injury.

Whether an injury satisfies the current definition of great bodily injury — i.e., whether the injury is "significant or substantial" (Pen. Code, § 12022.7, subd. (f)) — is for the jury to determine case by case. What matters here is whether a jury could reasonably apply the statutory definitions of great bodily injury and serious bodily injury and find that an injury was serious but not great bodily injury.

Juries have so found. In *Taylor*, the victim suffered, among other things, a fracture of the bone around one of her eyes, and her treating physician opined that the fracture "would normally heal itself without treatment." (*Taylor*, *supra*, 118 Cal.App.4th at p. 17.) The jury convicted Taylor of battery with serious bodily injury but found not true several charged allegations of personal infliction of great bodily injury. (*Id.* at p. 21.) The court nonetheless imposed the same five-year enhancement at issue in this case on the same ground urged by the Attorney General here: that a finding of serious bodily injury is "legally equivalent to a finding of 'great bodily injury.' " (*Id.* at p. 22.)

The Court of Appeal reversed. It reviewed the record and found the jury had correctly "focused on . . . whether the victim's bone fracture was sufficiently serious to constitute anything more than a 'moderate' injury within the meaning" of great bodily injury. (*Taylor*, *supra*, 118 Cal.App.4th at p. 25; see *Cross*, *supra*, 45 Cal.4th at p. 73 (conc. opn. of Corrigan, J.) [suggesting this is the appropriate inquiry for the jury when deciding whether a bone fracture amounts to great bodily injury].) The court in *Taylor* concluded that the verdict made clear the jury had found that the fracture did not amount to great bodily injury. (*Taylor*, at p. 25.) It held that "the conviction for battery with serious bodily injury is not legally or factually equivalent to a finding of great bodily injury." (*Id.* at p. 24; see also *id.* at pp. 24–25.)

Another example is *People v. Thomas* (2019) 39 Cal.App.5th 930, where the defendant punched the victim without warning twice in the jaw. The victim fell backward and " 'saw stars,' " and his jaw was broken in two places, requiring surgery "during which screws and plates were inserted." (*Id.* at pp. 933, 934.) "His jaw was wired shut after the surgery," and he received stitches for a gash on his face. (*Id.* at p. 934.) The attack "left him with permanent nerve damage." (*Ibid.*) In that case, as in *Taylor*, the jury convicted the defendant of battery with serious bodily injury but found that he had not inflicted great bodily injury. (*Id.* at p. 933.)

Here, the jury found that Cabrera inflicted serious bodily injury, but it deadlocked on whether he inflicted great bodily injury. On these facts, a jury could have found that Cabrera inflicted "a significant or substantial physical injury" (Pen. Code, § 12022.7, subd. (f)): He knocked Barnum unconscious and caused an inch-long laceration on his head that exposed his

skull and required stitches to stop the bleeding. A jury also could reasonably have found that the injury was not more than "minor or moderate harm" by its understanding of those terms. (CALCRIM No. 3160.) Barnum was unconscious for only a few minutes, his treating physician testified that the wound was not one that "would take a long period of time to repair," and the lingering effects to which Barnum testified were not especially severe. Ultimately, whether Barnum suffered great bodily injury is a factual issue for the jury. The facts of this case, like those of *Taylor* and *Thomas*, illustrate that not all jury findings of serious bodily injury necessarily entail a finding of great bodily injury.

This is true regardless of whether the jury was instructed in a manner suggesting that any injury listed in Penal Code section 243, subdivision (f)(4) is a serious bodily injury, regardless of its severity. In *Taylor*, the jury instructions and closing arguments "may have misled the jury by erroneously suggesting that *any* bone fracture constitutes serious bodily injury, no matter how minor." (*Taylor*, *supra*, 118 Cal.App.4th at p. 25, fn. 4.) The instructions here may have created a similar implication; the jury was instructed that "[l]oss of consciousness and a wound or cut requiring extensive suturing is a serious bodily injury." These instructions might lead a jury to perceive a wider gap between serious bodily injury and great bodily injury, and thus more readily find serious bodily injury without finding great bodily injury. But even if a jury was not instructed in such a manner, serious bodily injury and great bodily injury remain distinct.

The jury in this case found only that Cabrera inflicted serious bodily injury. It did not find that Cabrera inflicted great bodily injury. Instead, the jury deadlocked on the great bodily

injury allegations, resulting in the court declaring a mistrial on those allegations. So long as a jury could reasonably apply the statutory definitions and find a serious bodily injury not to be a great bodily injury, the jury's finding of serious bodily injury in this case did not necessarily establish that Cabrera inflicted great bodily injury; such a determination was not "inherent in the jury's verdict." (*Cunningham*, *supra*, 549 U.S. at p. 274.) Instead, it was the court that found "an additional fact to impose the longer term" (*id.* at p. 290) — namely, that the particular serious bodily injury Cabrera inflicted was one that also constituted great bodily injury. Imposing an enhancement based on that finding violated Cabrera's "Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt." (*Dillon v. United States* (2010) 560 U.S. 817, 828.) Even if most juries would find most serious bodily injuries to be great bodily injuries as well, a court's assessment of the evidence to find that a specific serious bodily injury in fact falls within the overlap between those terms is precisely what *Apprendi* forbids: judicial factfinding that increases the penalty for the defendant's crime "beyond what the jury's verdict or the defendant's admissions allow." (*Southern Union Co.*, *supra*, 567 U.S. at p. 352.)

## III.

The Court of Appeal here distinguished *Taylor* on the ground that the jury there made a "determination contrary to a finding of" great bodily injury, while "[t]here was no such determination in this case." Other courts considering this issue since *Taylor* have done the same. (See *People v. Johnson* (2016) 244 Cal.App.4th 384, 395–396; *People v. Arnett* (2006) 139 Cal.App.4th 1609, 1615.) But this purported distinction gets the *Apprendi* inquiry backwards. What matters is whether the jury

16

has found that the defendant inflicted great bodily injury, not whether it has rejected such a finding. As the Attorney General acknowledges, quoting *Yaeger v. United States* (2009) 557 U.S. 110, 125, " 'the fact that a jury hangs is evidence of nothing.' " Whether the jury in this case rejected great bodily injury or simply failed to find it, judicial factfinding to fill the gap violated Cabrera's right to have a jury find every fact increasing the penalty for his offense.

*Burroughs* is not to the contrary. That case addressed a felony murder conviction based on the felonious practice of medicine without a license, a crime requiring a " 'risk of great bodily harm.' " (*Burroughs*, *supra*, 35 Cal.3d at pp. 827, 830.) The question was whether the great bodily harm element of the unlicensed practice of medicine made that crime "inherently dangerous to human life" for purposes of the felony-murder rule. (*Id.* at p. 831.) In answering no, we analogized "great bodily harm" to the terms "serious bodily injury" and "great bodily injury," whose definitions include injuries that "do not, by their nature, jeopardize the life of the victim." (*Ibid.*) It was in that context — i.e., assessing whether "serious bodily injury," "great bodily injury," and "great bodily harm" denote an injury that "rise[s] to the level of being inherently life-threatening" — that we said "[t]here is no indication the Legislature intended to ascribe a different meaning to 'great bodily harm' . . . than is signified by 'great bodily injury,' or, for that matter, 'serious bodily injury' . . . ." (*Ibid.*) We had no occasion to consider whether "great bodily injury" and "serious bodily injury" are identical for purposes of the Sixth Amendment. (See *B.B. v. City of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "cases are not authority for propositions not considered" ' "].)

The holding in this case does not call into question our assertion in *Burroughs* that serious bodily injury and great bodily injury are " 'essentially equivalent elements.' " (*Burroughs, supra,* 35 Cal.3d at p. 831.) Nor do we express an opinion on cases that have relied on that assertion in other contexts. For example, the Courts of Appeal have long construed Penal Code section 12022.7, subdivision (g)'s bar on imposing the great bodily injury enhancement when "infliction of great bodily injury is an element of the offense" to mean that the enhancement may not be imposed where serious bodily injury is an element of the underlying offense. (See, e.g., *People v. Beltran* (2000) 82 Cal.App.4th 693, 696–697; *Hawkins, supra,* 15 Cal.App.4th at pp. 1375–1376.) In *Hawkins,* the court stated that great bodily injury and serious bodily injury have "substantially the same meaning" and on that basis concluded that "great bodily injury is indeed an element of battery under section 243, subdivision (d)." (*Hawkins,* at p. 1375.) *Hawkins* was decided before *Apprendi,* and the degree of similarity that *Hawkins* assigned to these terms in reaching its conclusion says nothing about the degree of similarity they must have to satisfy *Apprendi.* Even if it is sufficient for serious bodily injury and great bodily injury to be "*substantially* the same" (*Hawkins,* at p. 1375, italics added) for purposes of applying Penal Code section 12022.7, more is required to satisfy *Apprendi*'s strict allocation of roles between judge and jury under the Sixth Amendment.

Further, nothing we say here undermines our suggestion in dicta in *People v. Sloan* (2007) 42 Cal.4th 110 that if we were to consider a great bodily injury enhancement as part of the underlying offense for the purpose of either constitutional double jeopardy protections or the judicially created rule

prohibiting multiple convictions for necessarily included offenses, a conviction for willful infliction of corporal injury on a spouse with such an enhancement "would effectively establish the elements of . . . battery with serious bodily injury." (*Id.* at p. 117.) Our statement in *Sloan* rested on the assumption that all great bodily injuries are serious bodily injuries. Here we are considering the converse question of whether all serious bodily injuries are great bodily injuries. If anything, we would seem to cast doubt on our dicta in *Sloan* if we were to agree with the Attorney General that serious bodily injury necessarily establishes great bodily injury.

Our opinion today is also consistent with cases holding that a broken bone can constitute great bodily injury (*People v. Johnson* (1980) 104 Cal.App.3d 598, 608–610 (*Johnson*)) and that an injury need not require medical treatment in order to qualify as serious bodily injury or great bodily injury (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149–1150). The severity of injury may often amount to both great and serious bodily injury. In addition, our decision does not disturb other cases cited by the Attorney General, which hold that the jury instructions on great and serious bodily injury may stand on their own without further instruction distinguishing them (*People v. Kent* (1979) 96 Cal.App.3d 130, 136–137) and that battery with serious bodily injury does not, without more, qualify as a violent felony (*People v. Hawkins* (2003) 108 Cal.App.4th 527, 531) or a serious felony (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1119; *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 & fn. 5).

In sum, we do not question *Burroughs*'s statement that great bodily injury and serious bodily injury are " 'essentially equivalent elements.' " (*Burroughs*, *supra*, 35 Cal.3d at p. 831.) But in the specific context of *Apprendi*, " 'essentially

equivalent' " (*Burroughs*, at p. 831) or "substantially the same" (*Hawkins, supra,* 15 Cal.App.4th at p. 1375) or "substantially similar" (*Johnson, supra,* 104 Cal.App.3d at p. 610) is not enough. The maximum sentence a defendant can receive is the sentence "a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely, supra,* 542 U.S. at p. 303, italics omitted.) *Apprendi* demands that we consider only what was necessarily established by the "guilty verdict standing alone," not what the evidence otherwise demonstrated. (*Ring, supra,* 536 U.S. at p. 605; see *People v. Gallardo* (2017) 4 Cal.5th 120, 136 [a court "may not determine the 'nature or basis' of [a] prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction" but is instead "limited to identifying those facts that were established by virtue of the conviction itself"]; see also *Gallardo* at pp. 124–125, 134.) Near equivalence does not mean that a finding of serious bodily injury necessarily entails great bodily injury, and the Sixth Amendment bars sentencing courts from looking beyond the verdict to find that a particular serious bodily injury in fact constituted great bodily injury. We disapprove of *People v. Villareal* (1985) 173 Cal.App.3d 1136 and *People v. Moore* (1992) 10 Cal.App.4th 1868 to the extent they conclude that a serious bodily injury always constitutes a great bodily injury.

This case comes to us on review of the denial of Cabrera's petition for a writ of habeas corpus, in which he argued that he was provided ineffective assistance of appellate counsel. The Court of Appeal did not reach a conclusion as to whether counsel's performance was deficient, instead holding that Cabrera "failed to show prejudice in the form of a reasonable probability of a different outcome had appellate counsel raised

an *Apprendi* issue." Because our opinion today bears directly on that holding, we remand this case for reconsideration of Cabrera's ineffective assistance claim.

## CONCLUSION

The sentencing court's finding of great bodily injury violated Cabrera's Sixth Amendment jury trial rights under *Apprendi*. We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.


**LIU, J.**

**We Concur**:
**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**CANTIL-SAKAUYE, J.**[*]

---

[*]  Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Cabrera

—————————————————————————————————————

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 8/25/21 – 3d Dist.
**Rehearing Granted**

—————————————————————————————————————

**Opinion No.** S271178
**Date Filed:** March 2, 2023

—————————————————————————————————————

**Court:**  Superior
**County:**  Siskiyou
**Judge:**  Robert F. Kaster

—————————————————————————————————————

**Counsel:**

Andrew J. Marx, under appointment by the Supreme Court, for Petitioner Miguel Angel Cabrera.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Michael A. Canzoneri, Eric L. Christoffersen and Rachelle A. Newcomb, Deputy Attorneys General, for Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Andrew J. Marx
Law Office of Andrew J. Marx
P.O. Box 1225
Mt. Shasta, CA 96067
(530) 925-1291

Eric L. Christoffersen
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
(916) 210-7686